J-A15003-21

2022 PA Super 224

| | | |
|---|---|---|
| K.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| E.D. | : | No. 1883 EDA 2020 |

Appeal from the Order Entered October 5, 2020
In the Court of Common Pleas of Wayne County Domestic Relations at
No(s): 336-2015 DR

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

OPINION BY BOWES, J.: Filed: November 16, 2021

K.D. ("Mother") appeals from October 5, 2020 order that modified the custody arrangement with E.D. ("Father") to provide him supervised therapeutic visitation[1] with their three youngest children. We affirm.

The relevant facts and procedural history as follows:

The instant custody case has a lengthy and complicated history. [K.D] and [E.D.] are the natural parents of four (4) children, [Jo].D., age 18, J.D., age 14, [Sh].D., age 11, and S.D., age 7. The only children applicable to the instant matter are the three minor children[.] The parties have been separated since April of 2015, and Father has not seen the three minor children since that time. [Pursuant to an order entered on July 2015, Mother exercises sole legal and primary physical custody of the children.]

---

[1] Pursuant to the Child Custody Act, "visitation" is subsumed by the definitions of partial physical custody, shared physical custody, and supervised physical custody. *See* 23 Pa.C.S. § 5322(b). As the parties and the trial court periodically utilize the term in their respective briefs and opinions, we refer to "visitation" where it is necessary to maintain continuity.

> . . . Mother has made many allegations of physical, mental, and sexual abuse by Father with regards to the children.  The eldest child, [Jo].D., . . .  has resided primarily with Father since January of 2020 and has recanted all of his allegations regarding sexual abuse by Father.

Trial Court Opinion, 12/4/20, at 1.

Two of the foregoing points require further discussion.  First, the allegations of physical and emotional abuse relate to Father's use of corporal punishment as a means of disciplining the children in accordance with the practices of No Greater Ministries, also referred to as the Pearl Family Ministries, which Mother and Father followed as active members.  Second, while Father initially informed Mother that he viewed child pornography on the Internet, he subsequently learned that the website disclosure statement indicated that the actors were at least eighteen years old.  In this vein, we note that the police ultimately closed their child pornography investigation, which included the confiscation of the family's computer, without filing any pornography-related charges against Father.

On April 5, 2016, Father filed a petition to modify the July 2015 custody order so that he could exercise supervised partial physical custody with the three youngest children.  A custody master was appointed, and during the ensuing evidentiary hearings, the parties presented, *inter alia*, the testimony of one mental health professional, Robert Gordon, Ph.D., two social workers, Heather Evans and Chris Charleton, and Leatrice Anderson, Esquire, the

guardian *ad* litem ("GAL"). By stipulation, the master also considered a prior evaluation prepared by then-court-appointed custody evaluator Judith Munoz.

Dr. Gordon recommended supervised visitation, but the remaining professionals did not believe that supervised visitation was appropriate at that time. Except for one social worker, Ms. Evans, who viewed supervised visitation as the re-victimization of the children, none of the remaining professionals opined that supervised visitation should be precluded outright. As the Honorable Raymond Hamill subsequently summarized in granting Mother's exceptions to the master's recommendation for supervised physical custody, the qualified objections to Father's supervised visitation with the three youngest children were as follows: (1) Ms. Munoz was "open to reunification counseling" but recommended that Father participate so that the children do not feel that their concerns were unheeded; (2) Mr. Charleton "estimated that it would take one and one-half to two years before supervised visitation might be helpful;" and (3) noting the "unity and solidarity" among the children, the GAL pronounced "I cannot conclude that separating the two or three youngest children to implement visitation is in any of their best interests at this time." Trial Court Opinion, 1/11/18, at 5-6 (cleaned up).

Following the evidentiary hearings and the submission of briefs by Mother and Father, the master filed a report and recommendation granting partial relief. Specifically, the custody master recommended that Father participate in clinically-supervised visitation with the two youngest children.

As noted *supra*, Mother filed exceptions to the master's recommendation, which Judge Hamill granted. Essentially, Judge Hamill concluded that, "[w]hile the allegations of sexual abuse were deemed unfounded," in light of Father's failure to address his severe mental and moral deficiencies and lack of insight into how those deficiencies affected his children, it was not appropriate for Father to engage in clinically supervised visits with the two younger children at that juncture. Trial Court Opinion, 1/11/18, at 13. He reasoned,

The professionals who have been involved since the onset of this matter in 2015, Heather Evans, Chris Charleton, and Attorney Leatrice Anderson, all concluded that supervised visitation would not be in the children's best interest **at this time**. Ms. Munoz testified that to do this reunification counseling sought, Father must take responsibility or we are putting the children in a situation where they will feel like what they have said does not matter. Additionally, evidence from trial established that now, after years of therapy, the older two children are getting to the point where they are starting to recover from the trauma. The fact that Father would even propose that the children be taken out of the care of these professionals who have been treating them for years demonstrates his moral deficiency and his lack of concern for the children's best interests.

It is the opinion of this Court that, after taking into consideration all of the evidence – the allegations of physical, sexual, and emotional abuse, Father's confirmed use of corporal punishment, and threats to endanger himself and family members to keep such punishment secret — the record rises to a showing that Father is severely mentally or morally deficient as to constitute a grave threat to the welfare of the children. Further, Father has shown no insight into how his conduct has affected and harmed his children. While the allegations of sexual abuse were deemed unfounded, and therefore makes the case at bar fall somewhere between the factual analyses employed in *In re C.B.* [861 A.2d 287 (Pa.Super. 2004)] and *Rosenberg*, [504 A.2d 350 (Pa.Super. 1986)], this fact alone **is not dispositive that it is**

**an appropriate time** for Father to engage in clinically supervised
visits with the two younger children.

*Id*. (emphases added).  We affirmed.  *K.D. v. E.D.*, 195 A.3d 1020 (Pa.Super.

2018) (unpublished memorandum).

More than three years after filing his first modification petition, on July

26, 2019, Father filed a second petition for the modification of the existing

custody order pursuant to 23 Pa.C.S. § 5338(a).  Referencing his completion

of psychological and psychiatric evaluations and ongoing psychological

counseling, Father asserted that he addressed the deficiencies that formed the

basis of Judge Hamill's decision to deny the first petition.  Thus, noting these

accomplishments, Father sought to modify the custody arrangement to permit

periods of supervised partial physical custody with the minor children.

Subsequent to Father's filing his modification petition, then seventeen-year-

old Jo.D. recanted the allegation of sexual abuse against Father, re-kindled

the parent-child relationship, and moved into Father's residence.[2]

---

[2] Throughout her brief, Mother assails the trial court for acknowledging Jo.D's
recantation because she believes that the trial court insisted that his
recantation was not at issue in its decision relative to the younger children.
In reality, however, the court stated that the recantation was **not its central
focus** but was relevant to determine the best interest of the children in
relation to Father's motion for supervised visitation.  Thus, despite Mother's
persistent declarations to the contrary, the trial court did not feign to ignore
Jo.D.'s recantation entirely.  Rather, the court stated the precise basis for its
consideration of that uncontested fact and concluded that Mother's proffered
authority regarding recantations generally was not relevant.  *See* N.T.,
9/17/20, at 153-54.

The custody matter was specially assigned to the Honorable Kelly A. Gaughan of Pike County (hereinafter referred to as the "trial court") because of the "Full Bench Recusal" by the Wayne County judges. *See* Trial Court Order, 1/30/20, at 1. Judge Gaughan ordered a fresh custody evaluation by Ronald Esteve, Ph.D. and appointed a new GAL, Shannon Muir, Esquire, to represent the best interests of the three youngest children. Dr. Esteve completed a comprehensive custody evaluation that ultimately recommended periods of supervised therapeutic custody, and Attorney Muir issued a forty-eight page report, including eleven pages of analysis and recommendations, which the trial court ordered sealed with the exception of counsel.

During the ensuing five-day evidentiary hearing, the trial court considered, *inter alia*, Dr. Esteve's custody evaluation and supporting testimony, and the *in camera* interview with the two older children at issue, J.D. and Sh.D. In addition, the court heard testimony from Steven M. Timchack, Psy.D, Father's current therapist, the parties' respective experts, and the GAL.

On October 2, 2020, upon consideration of the sixteen custody factors delineated in Pa.C.S. § 5328(a), which we discuss *infra*, the trial court entered the above-referenced order that, *inter alia*, awarded Father therapeutic supervised partial physical custody of J.D., Sh.D., and S.D. under the directions of Honesdale Behavioral Health. Emphasizing the urgency of the situation, the trial court also outlined the expectations of cooperation between

the respective parties, and the continued reporting requirements among the GAL and the mental health professionals in anticipation of a review hearing on February 22, 2021.

This timely appeal followed. Mother asserted thirty-one issues in the concise statement of errors complained of on appeal that she filed contemporaneously with the notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court addressed Mother's litany of issues in its Rule 1925(a) opinion and the matter is ready for our review.

Mother presents three questions for our review:

1) Did the trial court err as a matter of law or abuse its discretion in wholly disregarding and altering the 2018 fully adjudicated factual findings of Judge Hamill in this case, upheld by this Court on appeal, in violation of the doctrines of *res judicata*, collateral estoppel, and the coordinate jurisdiction rule?

2) Did the trial court err as a matter of law or abuse its discretion in determining that there was no objective evidence of abuse by [Father], making inferences and conclusions that are not supported by the evidence presented at trial and the previous factual findings of the court?

3) Did the trial court err as a matter of law or abuse its discretion in finding that it was in the best interests of the children to have therapeutic supervised visitation with their father where the evidence demonstrated that [Father] still presented a grave threat to the minor children?

Mother's brief at 6.

Since the trial court styled the October 2, 2020 order as an "interim custody order" and scheduled a review hearing for February 2021, we must first address whether this appeal is proper. An appeal "may only be taken

from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right [Rule 311]; 3) an interlocutory order by permission; or 4) a collateral order [Rule 313]." ***Estate of Considine v. Wachovia Bank***, 966 A.2d 1148, 1151 (Pa.Super. 2009); ***See*** Pa.R.A.P. 341(a). Stated another way, "an appeal properly lies only from a final order unless otherwise permitted by rule or statute." ***G.B. v. M.M.B.***, 670 A.2d 714, 717 (Pa.Super. 1996)(citations omitted). As the instant order is neither collateral to the underlying litigation nor an interlocutory order that is appealable as of right or permission, we must determine whether it is a final order notwithstanding the "interim" designation.

Pursuant to Pennsylvania Rule of Appellate Procedure 341(b)(1), a final order is any order that disposes of all claims and of all parties. In ***G.B.***, ***supra***, we explained that a child custody order is final and appealable "only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." We continued, "this holding will protect the child from the protraction of custody litigation through repetitive appeals while still allowing prompt and comprehensive review of custody determinations. It will also support judicial economy and efficiency and uphold the integrity of the trial court's process in deciding custody matters." ***Id***.

As we stated in ***J.M. v. K W***, 164 A.3d 1260, 1263 (Pa.Super. 2017) (*en banc*), "until the trial court has rendered its best-interest determination

on the merits, an interim custody order is ephemeral and subject to further modification upon petition." Thus, an order that is intended to determine the parties' temporary status during ongoing custody litigation, and is not entered following a full evidentiary hearing, is not a final order. **G.B. supra** at 719 citing **Williams v. Thornton**, 577 A.2d 215 (Pa.Super. 1990).

Instantly, the trial court's interim custody order was temporary in name only. The order was entered following a full evidentiary hearing and the court's extensive consideration of the statutory factors, and it constitutes the trial court's final determination as to Father's petition to modify custody. As the February 2021 review hearing was only to hone the court-ordered therapeutic process and confirm the parties' participation, it had no bearing on the best interest analysis or the merits of Father's petition. Hence, it is external to the underlying custody determination which meets the requirements of Rule 341. **See Cady v. Weber**, 464 A.2d 423, 426. Accordingly, this appeal is proper and we address the merits of Mother's assertions.

Mother's first argument is that the trial court abused its discretion in discounting Judge Hamill's 2018 finding that Father perpetrated child abuse. To be clear, despite investigations by both the police and the child protective service agency, there is no determination of abuse in this case pursuant to

the Child Protective Services Law ("CPSL").[3]   Indeed, Mother's principal assertion that the trial court misstated Father's status as a perpetrator of abuse misses the mark.  Pursuant to the CPSL, an "Unfounded report" is one which was not determined to be "Indicated" by a county agency or "Founded" based on a criminal proceeding or a judicial adjudication that is typically in accordance with the Juvenile Act or the Protection From Abuse Act.  ***See*** Pa.C.S. § 6303 (defining "Founded report," "Indicated report," and Unfounded report").  Thus, notwithstanding Mother's repeated protestations in the case at bar, there is no "Substantiated child abuse" report in this case, *i.e.*, "Child abuse as to which there is an indicated report or founded report."  ***Id***. (defining "Substantiated child abuse").

Nevertheless, Mother's arguments are predicated upon Judge Hamill's proclamation of abuse, made in considering whether visitation was appropriate.  Specifically, Judge Hamill concluded that "Father subjected his children to a pattern of sexual, physical, and emotional abuse for many years before the parties' separation in 2015."  Trial Court Opinion, 12/4/20, at 12. Essentially, she conflates Judge Hamill's finding that Father constituted a threat to the children under the purview of the Child Custody Act with a substantiated finding of abuse under the CPSL.

---

[3] While Wayne County Children and Youth Services made an initial finding of abuse as to Jo.D., that determination was subsequently overturned.  N.T., 9/14/21, at 11.

The three-faceted contention that the trial court was bound by Judge Hamill's finding embraces *res judicata*, collateral estoppel, and the coordinate jurisdiction rule. Specifically, Mother asserts that, in granting the instant petition for modification, the trial court disregarded Judge Hamill's factual findings from 2018, reversed the determination that Father subjected the children to abuse, and overruled the 2018 order denying the prior petition to modify. Mother's brief at 12-13. She concludes that, despite recognizing that Father's status as a perpetrator of abuse "must be treated as established,[the trial court] unabashedly rejects the 2018 evidentiary findings." *Id*. at 14-15. As we discuss *infra*, Mother's assertions concerning the effect of Judge Hamill's prior custody decision are unconvincing. For the following reasons, none of the doctrines the Mother invokes controls our disposition.

Application of the doctrines of *res judicata* and collateral estoppel is a question of law requiring *de novo* review and the scope of review is plenary. **Weinar v. Lex**, 176 A.3d 907, 915 (Pa.Super. 2017). The trial court addressed these aspects of Mother's arguments collectively in its Rule 1925(a) opinion, reasoning that child custody is fluid and trial courts are free to modify custody orders where modification serves a child's best interest in light of the best interest factors outlined in 23 Pa. C.S. §5328. Essentially, the court concluded that modification was warranted "based upon competent evidence" presented during the five–day hearing because "the facts and circumstances surrounding this matter have changed significantly in the past four years.'"

(cleaned up). Trial Court Opinion, 12/4/20, at 3. The trial court further surmised that it was "free to modify an existing custody order, even if the facts previously litigated are treated as established, if it believes that the modification will serve the best interests of the child." *Id*. While we agree with the trial court's discussion of the relevant law and its ultimate conclusion, we address Mother's arguments relative to the three doctrines *seriatim* because each doctrine impacts this case differently.

*Res judicata*, *i.e.*, claim preclusion, blocks the re-litigation of a previously litigated claim or cause of action when a former suit possess four elements of commonality: "(1) the identity of the thing sued upon; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality or capacity of the parties suing or being sued." *In re N.A.*, 116 A.3d 1144, 1148-49 (Pa.Super. 2015). Furthermore, "[t]he dominant inquiry under those elements, then, is whether the controlling issues have been decided in a prior action, in which the parties had a full opportunity to assert their rights."

As it relates to *res judicata*, Mother posits that,

because [Father's] petition for modification of custody included no new issues related to whether the abuse had or had not occurred, that issue was subject to *res judicata* as it had already been decided in the 2018 proceeding in which the parties had an opportunity to appear and fully assert their rights, including on appeal.

*Id*. at 18 (cleaned up). Hence, she asserts that, absent demonstrating a change of circumstances, Father cannot seek to disturb Judge Hamill's determination of abuse. No relief is due.

Notwithstanding the fact that Mother phrases this claim as an "issue" concerning whether Father was a perpetrator of abuse, the doctrine of *res judicata* relates to claim preclusion, *i.e.*, whether Father can reassert a petition for modification years after Judge Hamill denied a similar petition. This claim fails because, regardless of any determination concerning the **issue** of Father's conduct prior to 2018, the trial court simply was not bound by Judge Hamill's 2018 order so long as the instant modification serves the best interest of the children.

Pursuant to the Child Custody Act, a custody order may be **modified at any time**, provided the modification is in the best interest of the child. **See** 23 Pa.C.S. §5338(a) ("Upon petition, a court may modify a custody order to serve the best interest of the child."); 23 Pa.C.S. §5328 (relating factors to determine child's best interest). As we explained in **Holler v. Smith**, 928 A.2d 330, 331–32 (Pa.Super. 2007), "[c]ustody matters are a special creature. . . . Unlike other actions which have a clear beginning, middle, and end, custody orders may be repeatedly modified."

Furthermore, contrary to Mother's assertion, the essential issue in deciding whether to modify custody is **not** whether a petitioner has demonstrated a change of circumstances. **See Karis v. Karis**, 544 A.2d

1328 (Pa. 1988) ("we hold that a petition for modification of a partial custody to shared custody order requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change in circumstances has been shown."); *see also Hutchinson v. Hutchinson*, 549 A.2d 999 (Pa.Super.1988) (changed circumstances are no longer required for court to review child custody orders.). Indeed, as explained in the legislative committee comment accompanying the custody modification provisions in the Child Custody Act, § 5338(a) is the codification of the High Court's holding in *Karis*, *supra*. 23 Pa.C.S. § 5338, Jt. St. Govt. Comm. cmt.–– 2010 ("Subsection (a) codifies the standard used in *Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988), where the Supreme Court held that 'a petition for modification of a partial custody to shared custody order requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change of circumstances has been shown.'").

The authority that Mother cites in support of her argument in favor of the application of *res judicata* is either Commonwealth Court precedent or predates § 5338. *See* Mother's brief at 16-18. As it is beyond peradventure that we are not bound by precedential decisions of the Commonwealth Court, and the Child Custody Act unequivocally reaffirms that the focus of a custody modification is upon the child's best interest rather than circumstantial changes, Mother's contrary assertions are unpersuasive. *Buttaccio v. Am. Premier Underwriters, Inc.*, 175 A.3d 311, 319 (Pa.Super. 2017); 23

Pa.C.S. § 5338, Jt. St. Govt. Comm. cmt.–– 2010. Thus, for all of the foregoing reasons, the doctrine of *res judicata* did not preclude the trial court's consideration of Father's petition for modification filed in 2019. The only salient issue before the trial court concerned whether Father's 2019 entreaty served the best interests of J.D., Sh.D., and S.D. based upon contemporary evidence.

Next, we address Mother's argument relative to collateral estoppel, which bars the re-litigation of a previously litigated issue. *Vignola v. Vignola*, 39 A.3d 390, 393 (Pa.Super. 2012). We examine the following factors to determine whether the doctrine applies: (1) whether the issue is identical to an issue that was decided in a prior adjudication; (2) whether there was a final judgment on the merits; (3) whether it involves the party against whom the plea was asserted in the prior adjudication; (4) whether the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action; and (5) whether the determination in the prior proceeding was essential to the judgment. *Id*.

Again, Mother's argument implicates the trial court's finding that "There are currently no indicated, founded or substantiated findings of either sexual or physical abuse of a child of record against Father." *See* Opinion and Order, 10/2/20 at 2. She asserts that the trial court effectively reconsidered the issue concerning "whether [Father] physically, sexually, and emotionally abused the children," which is a previously adjudicated fact determined by

- 15 -

Judge Hamill in 2018. Appellant's brief at 17. She continues that, because the issue regarding the prior abuse was subject to collateral estoppel, "it was egregious error for [the trial court] to . . . alter [Judge Hamill's] original finding[.]" Mother's brief at 17-18.

Unlike Mother's argument relative to the *res judicata*, collateral estoppel will, in fact, bar the re-litigation of any issue concerning Judge Hamill's finding that Father was the perpetrator of abuse. Unfortunately for Mother, however, that is not the end of our inquiry. While it is beyond argument that the trial court is bound by Judge Hamill's 2018 determinations relative to Father's abusive behavior or the children's best interest when Judge Hamill reviewed the case, neither of those issues precluded the trial court from modifying custody in 2020 based upon contemporary evidence that demonstrated that modification served the bests interests of the children. Hence, we reject Mother's contention that the doctrine of collateral estoppel barred Father from litigating his petition for modification based upon current evidence. Phrased differently, "Past conditions have relevance in a custody modification proceeding only to the extent that such conditions have a current impact on the child." 17 West's Pa. Prac., Family Law § 28:17 (Joanne Ross Wilder, et al., 8th ed.) (footnote omitted) (citing **In re Leskovich**, 385 A.2d 373 (Pa.Super. 1978)).

The final component of Mother's first issue implicates the coordinate jurisdiction rule, which is an aspect of the law of the case doctrine. **Zane v.**

*Friends Hosp*., 836 A.2d 25, 29 (Pa.2003). The rule establishes that "judges of coordinate jurisdiction should not overrule each other's decisions." *Id*. Principally, the purpose of the rule is to serve judicial economy, protect settled expectations, maintain consistency, and ensures efficiency within the litigation. *Ryan v. Berman*, 813 A.2d 792, 795 (Pa. 2002) *quoting Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1170 (Pa.Super. 1988); *see also Commonwealth v. Starr*, 664 A.2d 1326 (Pa. 1995) (rule promotes judicial economy, protects settled expectations, insures uniformity of decisions, maintains consistency of single case; effectuates streamlined administration of justice, and brings litigation to end).

Significantly, however, "the coordinate jurisdiction rule does not bar a judge at a later and different procedural stage of the case from overruling another judge's decision . . ., even on an identical legal issue and even where the record is unchanged." *Xtreme Caged Combat v. Zarro*, 247 A.3d 42, 47 (Pa.Super. 2021). As articulated by our High Court, the "general prohibition against revisiting the prior holding of a judge of coordinate jurisdiction . . . is not absolute." *Zane supra* at 29 (citations omitted).

The precise component of the rule that Mother invokes in the case at bar relates to the principle that, "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Starr*, *supra* at 1331. Thus, invoking, once more, the trial court's statement

- 17 -

regarding the absence of a current finding of abuse, Mother re-asserts that the trial court erred following the transfer of the case to Pike County in disregarding Judge Hamill's 2018 determination that Father was the perpetrator of abuse. Specifically, she argues, the trial court "made [its] own findings on the same issue already established by Judge Hamill . . . and instead claim[ed], 'there are currently no indicated, founded or substantiated findings of either sexual or physical abuse of a child of record against Father." Mother's brief at 40 (quoting Opinion and Order, 10/2/20 at 2).

Mother's claim regarding the coordinate jurisdiction rule fails for reasons similar to those that derailed her attempt to invoke *res judicata*, *i.e.*, modification of child custody orders is permitted where it serves the best interest of the child. Stated plainly, the trial court did not ignore Judge Hamill's factual findings, but rather, it put those facts in context of the current information available to it.

Father filed the instant petition for modification at a different stage of the children's maturity and it involves facts that have evolved since Judge Hamill disposed of a different motion in Mother's favor in 2018. Hence, the trial court did not disregard the prior allegations against Father. Rather, it considered all of the evidence concerning Father's actions, including those that Judge Hamill considered in 2018. Thus, in light of the doctrine's noted inapplicability where the posture of a case differs when judges of coordinate jurisdictions rule on a given issue, and mindful that child custody cases are

fluid, we reject Mother's attempt to call upon the coordinate jurisdiction rule in this case. Phrased differently, since the posture of the two motions differs significantly, the coordinate jurisdiction rule did not impede the trial court's authority to grant Father's petition for modification seeking supervised custody. *See Xtreme Caged Combat*, *supra* at 74; *Mellon Bank, N.A. v. Nat'l Union Ins. Co. of Pittsburgh, PA*, 768 A.2d 865, 870 (Pa.Super. 2001) ("[A]pplication of [coordinate jurisdiction rule] focuses on the procedural posture of the rulings in question."); *K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1092 (Pa.Super. 2015)("Under *Mellon Bank,* the procedural context alone precludes application of the coordinate jurisdiction rule.").

Next, we address Mother's related contention that the trial court abused its discretion by failing to consider Judge Hamill's prior finding of abuse in rendering its decision in favor of Father. After revisiting portions of the notes of testimony presented during the prior modification hearing that spanned 2016 and 2017, Mother first asserts that Judge Hamill's 2018 finding was supported by "objective evidence of abuse." Mother's brief at 19-23. Next, she identifies the favorable evidence adduced during the 2020 proceedings and contends that, "It is only by changing the facts, in direct contradiction to the outlined principles of law, that the trial court reaches the outcome that it does in the October 2, 2020, Opinion." *Id*. at 26. Mother continues that the trial court "has 'changed significantly' the facts and circumstances surrounding this matter." *Id*. Likewise, she complains that Dr. Esteve, the court-

appointed custody expert, undercut the children's credibility by equivocating, "I believe they were being as truthful and forthright and honest as they could be" and she criticizes him as having "issues in understanding 'facts.'" *Id*. at 26-27. In sum, Mother ultimately concludes that the trial court abused its discretion in "totally disregard[ing]" the 2018 findings in order to "determine that there was no objective evidence of abuse." *Id*. at 27.

Father counters that the trial court's findings are supported by the certified record. Father's brief at 14-15. He highlights the evidence establishing that he was not indicated as a perpetrator of abuse in a CPSL report or charged with any associated crimes. *Id*. at 14-15. Similarly, he notes that, following psychiatric testing, he was determined to not possess the characteristics of a sexual abuser. *Id*. at 14-15. Furthermore, Father highlights that Jo.D., who now resides with Father, subsequently recanted his accusation of sexual abuse and indicated that Mother coerced him to make the allegations by threatening to withhold his medication. *Id*. at 15. Father posits that Mother's perspective is clouded by her inability to accept any evidence that is favorable to his position. *Id*.

For the reasons explained, *infra*, Mother's attempt to frame the trial court's determination as an abuse of discretion is unconvincing.

As we have frequently reiterated,

> An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion

must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.

***Johnson v. Johnson***, 222 A.3d 787, 789 (Pa.Super. 2019) (quoting

***Portugal v. Portugal***, 798 A.2d 246, 249 (Pa. Super.2002)). Moreover, past

conditions, such as those present when Judge Hamill presided over the

custody litigation, are relevant in custody modification proceedings only to

the extent that they continue to impact the child. ***In re Leskovich***, 385

A.2d 373 (Pa.Super. 1978).

In rejecting Mother's assertion that it committed an abuse of

discretion, the trial court stated:

> This Court observed the parties and witnesses first-hand during the five (5) day trial. When it comes to issues of credibility and weight of evidence, the appellate court must defer to the trial judge who viewed and assessed each witness and the evidence first hand. The fact-finder is free to believe all, part, or none of the evidence. This Court issued a very detailed and thorough Opinion in which all of the testimony and evidence which was presented was discussed and analyzed. We specifically noted in our Opinion that none of Father's treating professionals believed him to be so severely or morally deficient as to pose a grave threat to the welfare of the children. We had the opportunity to observe Father first-hand and hear his testimony and found him to be a credible witness. We noted that there are currently no indicated, founded, or substantiated findings of sexual or physical abuse of a child against Father. Both the court-appointed custody evaluator, Dr. Esteve, and the GAL opined that the children should participate in supervised reunification therapy with Father.
>
> The appellate court is not in a position to dispute the trial court's determination unless the custody order is manifestly unreasonable as shown by the evidence of the record. Therefore, it is respectfully submitted that the Court completed

- 21 -

> a comprehensive review of the custody factors in light of the entire record presented and that this Court did not commit an error of law or abuse its discretion in ordering supervised reunification therapy between Father and the children.

Trial Court Rule 1925 Opinion, 11/4/20, at 6-7.

The certified record reveals the following facts that support the trial court's determination. Wayne County Children and Youth Services investigated the allegations of physical and sexual abuse of Jo.D. and J.D. and determined that there were no indicated, founded, or substantiated findings of either sexual or physical abuse of a child of record against Father. N.T., 9/14/20, at 10-11. Likewise, no investigations conducted by the Pennsylvania State Police or the Office of the Attorney General resulted in criminal charges associated with the alleged physical or sexual abuse of Jo. or J.D. *Id*. 7-8.

Moreover, the certified record bears out that the results of Father's psychiatric evaluation by Robert M. Gordon, Ph.D., and his psychotherapy with Steven M. Timchack, Psy.D, established that Father did not pose a threat to any of the children. Significantly, Dr. Gordon testified that the purpose of his evaluation was to determine, *inter alia*, "whether [Father] is currently mentally and emotionally stable to be allowed to have supervised visitation with his four children and to evaluate progress made under the care of his therapist[, Dr. Timchack]." N.T. 9/15/20 at 177. In making this assessment, Dr. Gordon administered a battery of psychological tests,

including the HARE Revised Psychopathy Test, which he characterized as the "gold standard" of psychopathy evaluations—and the test recommended by the Pennsylvania Sexual Offender Assessment Board. *Id*. at 178-81. He highlighted that Father's HARE score of zero was consistent with a person who is not a threat of abuse. *Id*. at 181. Dr. Gordon explained that Father's results demonstrated "there's just no psychopathic traits in his personality." *Id*. at 180. Hence, he opined to a reasonable degree of professional certainty that Father does not pose a risk of sexual abuse to his children. *Id*. at 189-90.

Likewise, Dr. Timchack, who has treated Father since March 2018, posited that Father exhibited remorse over his use of corporal punishment and now recognizes alternate means of disciplining the children. N.T. 9/16/20 at 11, 18-21, 28. Dr. Timchack also expressed that Father demonstrated personal growth over the ten treatment sessions that Father completed. *Id*. at 26. In this vein, Dr. Timchack shared,

> [Father] continues to impress me as a man who was able to quickly identify and come to terms with some of the errors in judgment he had. He quickly identified how . . . these beliefs . . . started and he has maintained a very kind of optimistic, forward looking and motivated demeanor throughout . . . the entire process[.]

*Id*. at 28.

Similar to the expert testimony of Dr. Gordon and Dr. Timchack, the court appointed custody evaluator, Dr. Esteve, noted that Father expressed

regret and remorse for his use of corporal punishment and testified that Father's psychological testing did not reveal any significant pathology that would indicate that Father posed a threat to the children. N.T. 9/15/20 at 33, 54, 79-80. Indeed, Dr. Esteve administered his own battery of testing and clinical questionnaires to both Mother and Father, and ultimately concluded that, while it would be emotionally difficult for J.D., Sh.D. and S.D., at least initially, supervised reunification therapy would serve the best interest of all three children.[4] *Id*. at 83-87. The only qualification that Dr. Esteve noted was that the ultimate success of therapeutic contact was dependent upon Mother's level of cooperation and her ability to forego efforts to undermine the process. *Id*. at 83.

Lastly, we observe that Jo.D., now an adult, is thriving in Father's home, and planning on pursing post-secondary education. As the trial court succinctly stated in its best interest analysis, "Jo[.D.]'s decision to live with his Father and the fact that he is thriving in . . . Father's care also contradict Mother's ongoing concerns of harm that she believes Father may pose to the children." Trial Court Opinion and Order, 10/2/20, at 14. Phrased differently, in light of the fact the Jo.D. moved into Father's home before he reached the age of majority, Mother's decision to relinquish her

---

[4] Likewise, Attorney Muir, the guardian *ad litem* testified in support of supervised physical custody in a therapeutic setting. N.T., 9/16/20, at 68, 69,-70.

then-minor child to Father undercuts her present argument that Father is an incurable perpetrator of abuse that remains a threat to the three younger children during supervised therapeutic physical custody.

As the foregoing evidence in the certified record supports the trial court's factual determinations, we find no merit to Mother's claims. Stated plainly, the trial court did not disregard Father's past actions. Rather, it considered all of the evidence concerning Father's history relating to corporal punishment and allegations of abuse, including those that Judge Hamill considered in 2018, and determined that Father does not currently present a threat to his children. As the certified record supports the trial court's determination, we do not disturb it.

In her final issue, Mother contends that the modification of custody to permit supervised therapeutic visitation does not serve the best interests of the children. Traditionally, the denial of a right to visitation is rare.[5]

_____

[5] Indeed, Pennsylvania Courts applying the former statutory regime routinely held, "A parent will be denied visitation only in those instances where the record shows that the parent is severely mentally or morally deficient so as to constitute a grave threat to the child's welfare." **Rosenberg v. Rosenberg**, 504 A.2d 350, 352 (Pa. Super. 1986) (citing **Niadna v. Niadna**, 494 A.2d 856, 858 (Pa.Super. 1985) and **Somers v. Somers**, 474 A.2d 630, 631 (Pa.Super. 1984). However, the authority concerning a "grave threat" in relation to child custody precedes the effective date of the Child Custody Act, which does not specifically establish the "grave threat" standard. In **M.J.M. v. M.L.G.**, 63 A.3d 331, 338 (Pa.Super. 2013), we held that judicially-created doctrines cannot be grafted on the best interest factors that the Legislature established in § 5328(a). **See also D.R.C. v. J.A.Z.**, 31 A.3d 677, 688 (Pa. *(Footnote Continued Next Page)*

As we recently reiterated, "The standard of review of a visitation order is the same as that for a custody order." **Graves v. Graves**, 2021 PA Super 207 (filed October 18, 2021) (quoting **T.B. v. L.R.M.**, 874 A.2d 34, 37 (Pa.Super. 2005)). We review the child custody order according to the following scope and standard of review:

> This Court reviews a custody determination for an abuse of discretion. We will not find an abuse of discretion merely because a reviewing court would have reached a different conclusion. Rather, appellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will.

**R.L. v. M.A.**, 209 A.3d 391, 395 (Pa.Super.2019) (cleaned up).

Moreover,

> on issues of credibility and weight of the evidence, we defer to the findings of the trial court which has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest

---

2011) (Then-Justice, now-Chief Justice Baer, concurring) (observing, following the enactment of the Child Custody Act, "there is no need for any trial court to find a "grave" threat of harm.").

However, the **M.J.M. Court** also acknowledged that trial courts may nevertheless consider judicial doctrines under the catch-all provision of § 2328(a)(16). **M.J.M.**, **supra** at 338 ("to the extent the trial court finds it necessary to explicitly consider [non-statutory doctrine], it is free to do so under subsection (a)(16)."). Hence, it was within the purview of the trial court to consider the absence of grave threat in reviewing the custody factors.

of the child was careful and thorough, and we are unable to find any abuse of discretion.

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa.Super. 2014) (cleaned up).

As noted, in addressing Mother's foregoing arguments, the Child Custody Act permits modification of a custody order "to serve the best interest of the child." 23 Pa.C.S. § 5338(a). When awarding any form of custody, the Child Custody Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

- 27 -

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16). This Court has stated that, "**[a]ll** of the factors listed in § 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original).

In granting Father periods of supervised therapeutic partial custody, the trial court reviewed the relevant custody factors outlined in 23 Pa.C.S. § 5328(a). It determined that four factors were either neutral or inapplicable, three favored Mother, five militated in favor of Father, and four factors would

be addressed by the trial court's order and continued oversight of the therapeutic process. Specifically, as to subparagraph (a)(16), the catchall provision for any relevant factor, the trial court determined "the facts and circumstances surrounding this matter have changed significantly since the testimony and evidence was closed on Father's last request for custody more than four years ago. This Court finds that it is the current situation of the parties and children that is relevant in making this determination." Opinion and Order, 10/2/20, at 23.

Ultimately, the trial court concluded,

The current trial record does not support a finding that the Father is so severely or morally deficient so as to pose a grave threat to the subject children's welfare. This Court observed the parties and witnesses first hand. The Court Appointed Custody Evaluator and Guardian Ad Litem recommend that supervised partial custody in at therapeutic setting be directed. This Court has done a comprehensive review of all of the custody factors in light of the trial record and concludes that it is the best interest of the subject minor children that Father be granted supervised partial custody in a therapeutic setting.

*Id*. at 23.

Mother's challenge to the trial court's exercise of discretion focuses on two factors that favored Father: subparagraphs eight and thirteen, concerning the attempts of a parent to turn the child against the other parent; and the level of conflict between the parties, respectively. We address the arguments collectively.

In addressing the eighth factor in Father's favor the trial court determined that Father encouraged Jo.D. to maintain a relationship with

Mother and the younger siblings after he moved into Father's residence. **See** Trial Court Opinion and Order, 10/2/20, at 20. As to Mother, however, the court found a heightened level of alienation, reasoning, in pertinent part, as follows:

> It is abundantly clear to this court, based on the trial record, that Mother has not only consistently attempted to turn her children against the Father since 2015, but has successfully managed to do so with respect to her three younger children. Mother has repeatedly told them frightening stories about their Father. She has shared with them things that they are too young to process, such as his alleged viewing of [pornography, which she labeled] "bad pictures." She has created an environment in which the children feel they must carry continued hatred and fear of their Father. She devalues Father by identifying him [by his first name]" to J.D., S[h].D. . . . and S.D. . . . . She has expressed disdain for Jo[.D.]'s choice to live with Father to her children. . . . Mother has continued to engage in polarizing conduct which goes far beyond what could be deemed a necessary safety measure for the children. Her conduct served solely to further turn J.D., S[h].D. . . . and S.D. . . . against their Father.

**Id**. (cleaned up).

Mother contends that the trial court erred in finding that she attempted to alienate the children from Father and in elevating the level of conflict between the parties. Mother's brief at 34-36. Essentially, she contends that the court erred in punishing her for her efforts to protect the children from abuse. She notes that the custody law does not require that a parent validate her desire to protect her children with evidence that the allegations of abuse were founded or proven, which she nevertheless asserts was established by Judge Hamill's 2018 determination.

Similarly, as to factor thirteen, the trial court observed that the extreme conflict between the parties was due to Mother's preoccupation with the past allegations that Father abused Jo.D. and J.D.[6]  The trial court explained,

> Mother continues to harbor suspicion and hostility against Father. Mother has not cooperated with Father in any manner since 2015. This Court will not hold that against her as the prior Court Order did not direct any cooperation and Mother maintains that she believed that her actions were necessary to protect her children from abuse.  Of concern to the Court is that Mother appears to be so firmly entrenched in her position that Father should not be granted any type of custody with the minor children, that she has been unwilling or unable to fathom the possibility of having to cooperate with Father.  Mother demonstrated reluctance to cooperate in these court proceedings by her dilatory conduct during the evaluation process with Dr. Esteve.  Mother's extreme position causes this Court to have reasonable concern over Mother's willingness to cooperate with Father to the extent necessary for her to comply with an Order of Court.

*Id*. at 22.

Mother maintains that her concern for the children's safety and her efforts to protect the children from Father is not evidence of her unwillingness or inability to cooperate with him.  She continues that, while the trial court acknowledged that Judge Hamill did not order her to cooperate with Father, and even stated that it would not hold her efforts against her, the trial court erred in concluding that this factor militates in Father's favor.  She complains

_____

[6] The court accepted as true Father's testimony that he is willing to cooperate with Mother but noted that Mother's desire to cooperate was nonexistent.  Trial Court Opinion and Order, 10/2/20, at 22.

that the trial court characterized her behavior as dilatory and doubted her willingness to cooperate.

In this vein, Mother also asserts, "the trial court engage[d] in mind-boggling 'logic' to justify its punishment of [Mother] for relying upon and abiding by the factual findings and opinion of the trial court in 2018." Mother's brief at 35. Ultimately, she surmises that the trial court erred in finding that Father no longer presented a grave threat to the children and by engaging in the statutory analysis of the children's best interests, "[g]iven the multitude of evidence against [Father], and his refusal to accept any responsibility for the 2018-established abuse of the children at issue[.]" *Id*. at 36. For all of the following reasons, Mother's claims fail.

The certified record is replete with evidence of Mother's alienation of Father under the pretense of protecting the children from abuse. First, we observe that Father conceded that both he and Mother committed past physical and emotional abuse in accordance with a religious doctrine that he no longer follows. In fact, two separate experts testified that Father exhibited remorse for his past practices and no longer follows those tenets.

Second, the allegations that Father perpetrated sexual abuse against Jo.D. and J.D. were not substantiated under the CPSL, a fact that Judge Hamill acknowledged in concluding that it was nevertheless inappropriate for Father to engage in clinically supervised visits with the two younger children when the matter was before him in 2018. However, Father's petition for

modification contended, and the trial court expressly found, that Father addressed the safety concerns that Judge Hamill noted in his 2018 decision to deny supervised visitation. Thus, the trial court's statement regarding the absence of an indicated, founded or substantiated finding the Father perpetrated sexual abuse or physical abuse was made in the context of these facts. More importantly, and contrary to Mother's resolute pronouncements that she is merely protecting her children, the trial court's statement is supported by the certified record. Against this backdrop, we cannot discern that the trial court abused its discretion in viewing Mother's dogged allegations that continue to paint Father has a perpetrator of abuse as evidence of parental alienation under subparagraph eight of the enumerated custody factors.

As it relates to the trial court's consideration of the lack of parental cooperation pursuant to subparagraph thirteen, Dr. Esteve noted four general "observations" that are essential to the children's welfare: (1) a working and productive relationship between the parents; (2) the need for parents to assist the children in learning to love the other parent; (3) the children's healthy relationship with both parents; and (4) the need for both parents to maintain a healthy outlook. *Id*. at 75-78. Addressing these principles *seriatim*, we note that Dr. Esteve found that Mother had a negative impacted on the first three observations. He testified that Mother dismissed "out of hand" the thought of maintaining a positive relationship with Father. *Id*. at 76.

Likewise, Mother was unwilling to help the children find anything positive about Father, or build any form of a relationship with him. *Id*. at 77-78. As it relates to the third point, Dr. Esteve observed, "the three youngest [children] certainly have this very, very frightening and dark view of their father." *Id*. at 78. While Dr. Esteve did not relate the final observation to Mother, it is patently clear from the certified record that Mother's perspective in this protracted custody litigation is clouded by an unresolved conflict with Father.

The above observations illustrate the unfortunate reality that Mother's perspective of Father precludes even the smallest measure of cooperation. This actuality is further illuminated by Dr. Esteve's apprehension that Mother would undermine the very therapeutic contact that he recommended to the trial court. N.T., 9/15/20, at 83. He testified, "[b]ased on all of my experience with [Mother], . . . all of that leads me to believe that she will not support [therapeutic partial custody] and will undermine that [process]. *Id*. at 84.

The GAL, Shannon Muir, Esquire, expressed similar concerns about Mother in her testimony regarding Mother's "strongly held" convictions that Father is not only a danger to her children but "a danger to the community at large." N.T., 9/16/20, at 71. Further, noting Mother's social-media posts and public protests in anticipation of the evidentiary hearing, Attorney Muir testified that she did "not believe that [Mother] would follow a [c]ourt [o]rder" that required the children to have supervised contact with Father. *Id*.

Attorney Muir even expressed her concern that Mother could be a flight risk if the outcome of the custody hearing was not favorable. *Id*. at 78-79. The GAL noted that she believed that Dr. Esteve had similar concerns about Mother's potential flight risk. *Id*. at 78.

Finally, as to the effect of this prodigious dissonance on the children, Attorney Muir opined,

> [I]n my interactions with the children, they are very distressed by the continuing nature of the litigation. They feel as if it consumes them. . . and [M]other seemed to be unable or unwilling to contemplate what her role in that could be[.] . . . I believe [that] it is detrimental to the children in that it prohibits them from being able to kind of have some semblance of normalcy in their everyday life.

*Id*. at 76.

In view of the evidence in the certified record, we reject Mother's assertion that the trial court abused its discretion in concluding that Mother was principally responsible for the extreme conflict between the parties and that her preoccupation with the allegations against Father impeded any ability to cooperate with Father for the benefit of the children. We also are not persuaded by her argument that the trial court employed "mind boggling" logic in making Mother accountable for her persistent belief that Father would present a danger to the children if supervised contact was permitted. The weight of the evidence in the certified record bears out that Mother's reliance on Judge Hamill's findings of fact from 2018 as a basis to continue to alienate Father at this juncture in the custody litigation is unfounded. Stated

succinctly, for all of the reasons we explained *supra*, the certified record supports the trial court's current determination in favor of Father, notwithstanding Judge Hamill's finding of abuse in 2018.

In sum, the trial court engaged in a comprehensive best interest analysis pursuant to § 5328(a)(1)-(a)(16) before granting Father's modification petition and fashioning a custody arrangement that permits supervised therapeutic visitation.  The trial court's analysis relative to whether Father currently presents a threat of harm to the children is careful, thorough, and reasonable, as shown by the evidence of record, and we discern no abuse of discretion.  Therefore, we do not disturb the trial court's determination. **See A.V.**, **supra** at 820 ("Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.").

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/16/2021</u>