J-A15003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BRYAN CAIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BILLIE CAIN | : | |
| | : | |
| Appellant | : | No. 255 MDA 2024 |

Appeal from the Order Entered January 11, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2020-FC-002885-03

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: JULY 12, 2024**

Billie Cain ("Mother") appeals *pro se* from the January 11, 2024[1] order entered in the York County Court of Common Pleas that denied Mother's petition to modify custody of C.C. ("Child") without a hearing.  Upon review, we vacate the order and remand for further proceedings.

In its Pa.R.A.P. 1925(a) opinion, the trial court has authored a comprehensive and accurate procedural and factual history, which we adopt for purposes of this appeal.  Trial Ct. Op., 3/8/24, at 1-8.  In sum, from 2017 until 2020 the York County Office of Children and Youth ("the Agency") received numerous reports regarding Mother's unstable health and inability to care for Child.  More recently, in February and June of 2020, the Agency

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The order is dated January 10, 2024, but the clerk did not record notice of entry of the order on the docket until January 11, 2024.  **See** Pa.R.A.P. 108(b).

received reports that Mother and Child had worms in their bodies and coming out of their orifices and Mother made Child undergo numerous medical tests and procedures to rid Child of the worms. There is no medical documentation that Child ever had worms. The Agency continued to implement safety plans and offer Mother mental health services, which she refused. On October 14, 2020, the Agency received a report that Mother had contacted the Northeastern Regional Police Department sixteen times during the 2020 calendar year to make false reports of intruders in her home, bombs in her backyard, neighbors placing fireworks under the hood of her car, and various other reasons. On October 22, 2020, the Agency obtained emergency custody of Child and filed a dependency petition.

On December 11, 2020, Child's father Bryan Cain ("Father") filed a complaint for custody of Child. On December 15, 2020, the dependency court found that Child was not a dependent child because Father was ready, willing, and able to care for Child, awarded Father sole legal and physical custody of Child, and dismissed the dependency petition. On January 22, 2021, the custody court awarded Father sole legal and primary physical custody of Child. The court awarded Mother supervised physical custody of Child several times a week.

On August 25, 2021, Father filed a Petition for Special Relief alleging that Mother was exhibiting unstable and potentially harmful behavior while Child was in her care. On May 11, 2022, after a hearing, the trial court awarded Mother supervised physical custody one weekend per month and

granted Father the power to cancel the visit if Mother exhibited concerning behavior. The court also found that Mother's past behavior of having "emotional meltdowns" and taking Child "to doctors several times about alleged parasites and so forth that didn't exist" constituted "medical abuse" and urged Mother to engage in more intense mental health treatment. Order, 5/11/22.

In June, July, and August of 2023 Mother filed petitions for contempt against Father, as well as several addendums to the petitions. On November 1, 2023, after a hearing, the trial court declined to find Father in contempt and denied all three petitions.

On November 16, 2023, Mother filed a petition to modify custody, seeking primary physical custody and shared legal custody of Child. In the petition, Mother averred that Child was "failing" under Father's care and that Child repeatedly requested to live with Mother. Petition, 11/16/23, at ¶ 6. Mother attached a psychological evaluation, in which she had participated, to the petition. On December 19, 2023, a custody conciliation conference occurred.

On January 11, 2024, upon reviewing the conciliator's report as well as the record, the trial court denied Mother's petition without a hearing. In the order, the trial court found that "Mother has not met the burden of proof to demonstrate that a material change in circumstances has occurred since the entry of the operative [] May [11], 2022 [order]." Order, 12/19/23. The order further found that Mother attached "a psychological evaluation, which

appears to be self-reporting with no input from [] Father." ***Id.*** The court instructed, "[i]f Mother wishes the [c]ourt to consider the results of a psychological evaluation that she undergoes, then the evaluation must be non-self-reporting and must include input from Father." ***Id.***

Mother filed a motion for reconsideration alleging that her psychological evaluation demonstrated "huge positive change" and "was not completely self-reporting." Motion, 1/22/24. The trial court denied the motion on February 8, 2024.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

In her *pro se* brief, Mother raises the following issues for our review:

1. Whether the trial court erred or abused its discretion in its denial of petition to modify without [a] hearing held.

2. Whether the trial court erred or abused its discretion by denying petition to modify.

3. Whether the trial court adequality weighed the applicable information/history.

4. Whether the trial court adequately considered and examined the situation properly.

5. Whether the trial court failed to correctly apply the law.

6. Whether the trial court has shown bias or ill will in its decision making.

Mother's Br. at 6.

**A.**

- 4 -

This court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

"Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will 'serve the best interest of the child.'" *Shiflet v. Shiflet*, 305 A.3d 983 (Pa. Super. 2023) (citing 23 Pa.C.S. § 5338(a)). Indeed, when reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. *Saintz*, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and

spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." ***S.C.B. v. J.S.B.***, 218 A.3d 905, 916 (Pa. Super. 2019).

The trial court "shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child," including the seventeen factors mandated by the Custody Act. 23 Pa.C.S. § 5328(a). The court must "delineate the reasons for its decision[.]" ***Id.*** at § 5323(d). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

**B.**

In her first issue, Mother avers that the trial court abused its discretion when it denied her petition to modify custody without holding a hearing. Mother's Br. at 24. Mother argues that once she and Father could not agree during the conciliation conference, the court should have scheduled a conference and a hearing. ***Id.*** Mother further argues that the trial court failed to follow the rules of civil procedure when it disposed of her petition without a hearing. ***Id.*** We agree.

In actions for custody, the Pennsylvania Rules of Civil Procedure clearly provide that "[n]o judgment may be entered by default or on the pleadings." Pa.R.Civ.P. 1915.9. The comments further explain "the best interest of a child is never a purely legal determination. Rather, a multitude of factual determinations is required. Thus, the rule provides that there shall be no judgment entered on the pleadings." *Id.* cmt.

Instantly, in denying Mother's petition to modify without a hearing, the trial court emphasized that Mother failed to demonstrate a change in circumstances and relied on misleading documentation to support her petition to modify. The court opined:

> In the order denying claims, the trial court found that there was no change in circumstances insomuch as [Mother] continues to pose a threat of harm to [C]hild. The trial court outlines the manner in which [Mother] can refile, once [she] has complied with securing a valid evaluation or she can otherwise show that she no longer poses a threat of harm. Because the psychological evaluation was self-reporting and based on misinformation, and absent any other indication that [Mother] has addressed her significant mental health issues, the trial court was within its authority to determine that [Mother] still posed the same threat of harm she did when the previous [o]rder was entered, and that further evaluation was necessary before further proceedings can begin.

Trial Ct. Op. at 12-13 (footnote omitted).

It is well-settled that "the essential issue in deciding whether to modify custody is **not** whether a petitioner has demonstrated a change of circumstances." *K.D. v. E.D.*, 267 A.3d 1215, 1224 (Pa. Super. 2021). Rather, our Supreme Court has held that a petition for modification of custody

"requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change in circumstances has been shown." **Karis v. Karis**, 544 A.3d 1328, 1332 (Pa. 1988); **see also** 23 Pa.C.S. § 5338(a) ("Upon petition, a court may modify a custody order to serve the best interest of the child.")

When Mother filed a petition to modify custody, the trial court was tasked with determining whether modification was in the best interest of Child. To do so, the trial court was required to hold a hearing and make findings. Here, not only did the trial court employ the wrong legal standard in violation of Section 5338(a) by focusing on whether Mother demonstrated a change in circumstances, but the trial court also made a decision on the pleadings— specifically Mother's psychological evaluation—without holding a hearing in violation of Rule 1915.9. Thus, we conclude that the trial court abused its discretion.

Accordingly, we vacate the trial court's order denying Mother's petition and remand for the trial court to hold a hearing to determine whether modifying custody is in Child's best interest. In light of our disposition, we decline to address Mother's remaining issues.

Order vacated. Case remanded with instruction. Jurisdiction relinquished.

Judge Beck joins the memorandum.

President Judge Emeritus Stevens notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/12/2024