J-A15006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| RICHARD SEAN PARNELL | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| LAURIE A. PARNELL | : | No. 1494 WDA 2021 | |

Appeal from the Order Dated November 22, 2021
In the Court of Common Pleas of Butler County Civil Division at No(s):
F.C. No. 17-90403-C

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: September 8, 2022**

Richard Sean Parnell ("Father") appeals from the order that awarded to Laurie A. Parnell ("Mother") primary physical custody and sole legal custody of the parties' three children.  We affirm.

Mother and Father married in 2010.  Their children were born in 2009, 2011, and 2013.  Mother was employed as a loan officer with a flexible schedule, primarily working from home in the marital residence in Cranberry Township, Butler County.  Father worked for a mortgage company, for a corporate training company, as a fiction and non-fiction author, and he also undertook successive campaigns for the U.S. House and Senate.  Prior to the COVID-19 pandemic, Father traveled extensively for work.

The parties' relationship was tumultuous. Father maintained that their fighting was verbal, while Mother alleged that Father also became physically

violent at times. Mother twice filed petitions pursuant to the Protection From Abuse Act ("PFA"). The first PFA petition, commenced in 2017, was withdrawn by Mother. The second PFA petition was based upon an alleged incident in 2018 that prompted the parties' separation, during which Father purportedly harmed one of the children. This petition was denied after a full hearing without the findings of fact or a legal explanation. The PFA case was subsequently expunged on Father's motion, which Mother did not oppose.

After separation, Mother remained in the marital residence. Father initially remained in Butler County, but later took up residence twenty-five minutes away in Ohio Township, Allegheny County. The parties each resided approximately fifteen minutes away from the children's K-8 private school, and initially exercised shared legal physical custody pursuant to a July 2018 interim order providing for a 5-2-2-5 schedule. The parties agreed to largely maintain this arrangement in a consent order entered in April 2019, however, Mother was granted additional time with the children on the afternoons of school days during Father's custodial periods to assist them with their homework.

The parties' separation did not terminate the conflict or animosity between them. Rather, both parents engaged in communication that was at best poor, at worst arguably abusive, and was commonly overtly hostile. Topics of conflict and disagreement spanned the gamut of coparenting, including the availability of the noncustodial parent to access the children by

phone, whether the children's homework assignments were being completed, their need for therapy and to which mental health counselor the children should go, which school the children should attend, and whether each parent informed the other about doctor appointments and sports schedules.

In August 2020, Mother filed for modification of custody. Pretrial conferences were twice rescheduled after the assigned trial judges recused from the case. The present trial judge was assigned in July 2021. Additional filings followed, including amended petitions from Mother requesting primary physical custody and sole legal custody based upon Father's alleged refusal to address the children's mental health concerns and educational needs. Father ultimately in an amended answer and counterclaim sought primary custody himself.

The matter was tried over three days in November 2021. Mother offered the testimony of two of her siblings, who related observations of Father exhibiting intense anger or impatience with one of the children. Mother testified about Father's physical and verbal abuse of her throughout the relationship and, over Father's objections, related the details of the incidents that formed the bases of the PFA filings. Mother also produced photographs that she indicated depicted injuries that Father had caused to two of the children. Mother further provided extensive testimony and printouts of written communications with Father documenting the high level of conflict between the parties, including Father's refusal to allow the children to continue seeing

a particular licensed mental health counselor. Mother explained the negative impact the absence of counseling had on the children, with one child experiencing a significant crisis in 2021 before she filed her request for sole legal custody. Mother further explained her intention to remain in the children's current school district, her abundant availability to be at home to supervise the children, and her availability to ensure their participation in extracurricular activities.

Father testified as to his present living situation with his paramour and her two daughters, aged fourteen and ten, with whom the children have positive relationships, and the presence nearby of his extended family. Father opined that his travel for work and campaigning would not interfere with his ability to exercise physical custody, as he would schedule trips for times when the children were with Mother. Father asserted a willingness to have the children continue to go to their current schools, and to resume counseling, indicating that Mother had never informed him of the incident in 2021.

Father denied having abused any of the children. He maintained that one of the alleged injuries never happened, and indeed contended that the child shown in the photograph Mother offered was not his child. Father also explained that Mother was not present for the second incident, which he maintained was an accident that occurred during play. Father presented the testimony of his live-in paramour, and of an employee who worked for the couple during the marriage and who continues to provide some childcare at

Father's home, concerning the loving and appropriate relationship he and the children share. Father also offered the testimony of the court-appointed clinical psychologist who opined that the children should resume therapy with the involvement of both parents.

Additionally, the parties gave testimony concerning sensitive mental health topics, which was taken outside the presence of the media and other spectators and was sealed. The trial court also heard sealed testimony from each of the children with only the court reporter and attorneys present.

On November 22, 2021, the trial court filed an opinion detailing his credibility determinations and factual findings, and an order of court establishing a new custody arrangement. Specifically, the trial court ordered that Mother shall have primary physical custody of the children subject to Father's partial custody on the first, third, and fourth weekend of each month. The order also provided that Mother shall have sole legal custody of the children, meaning "the sole right to make major decisions on behalf of the children, including, but not limited to, medical, religious[,] and educational decisions."[1] Order, 11/22/21, at ¶ 1. Further, the order indicated that all terms and conditions of the prior custody order not inconsistent with the new order remained in effect.

---

[1] Father, however, retained full access to all third-party records, as well as notice of all scheduled appointments to allow Father to attend if he so wished.

This timely appeal followed. Both Father and the trial court complied with Pa.R.A.P. 1925. Father states the following questions for our review, which we have re-numbered for ease of disposition:

1. Whether the trial court abused its discretion and erred as a matter of law in awarding Mother primary physical custody of the parties' three minor children.

2. Whether the trial court abused its discretion and committed errors of law in its application of the custody factors at 23 Pa.C.S. § 5328.

3. Whether the trial court abused its discretion and erred as a matter of law by making findings related to the alleged complications of a 5-2-2-5 shared custody schedule despite no evidence of such complications being admitted in this matter.

4. Whether the trial court abused its discretion and erred as a matter of law when it found that Factor 4 weighs heavily in favor of Mother based upon Father's move to a different school district while, in a contradictory finding at Factor 11, the court found that the distance between the parties' residences is not an impediment to an appropriate custody arrangement.

5. Whether the trial court abused its discretion and erred as a matter of law when it speculated as to Father's travel schedule and future unavailability, which was based on the court's own presuppositions and not based on the evidence or testimony presented.

6. Whether the trial court abused its discretion and erred as a matter of law in its analysis of Factor 13 when it referenced Mother as the parent "who will have primary residential custody of the children," demonstrating that the court had predetermined that Mother would be awarded primary physical custody and conducted its analysis based upon that presumption and not based upon the evidence and testimony admitted as to the parties' current custody arrangement.

7. Whether the trial court abused its discretion and erred as a matter of law in its analysis of Factor 15 when it weighed the factor against Father based on an improper finding that Father did not agree to counseling and after the court found that Mother failed without good reason to communicate about one of the children's threats of suicide and sometimes failing to effectively communicate about the children's health, thereby precluding Father from having all necessary information available to make an informed decision regarding the children's counseling needs.

8. Whether the trial court erred as a matter of law by finding that Father lacked credibility based upon his denial of factual allegations raised by Mother without detail, his attire, and the in direction [sic] which Father looked in the courtroom while testifying.

9. Whether the trial court abused its discretion and erred as a matter of law when, contrary to the doctrine of collateral estoppel, it admitted testimony and evidence regarding abuse allegations which the court had already found to not rise to the level of abuse in a PFA proceeding.

10. Whether the trial court abused its discretion and erred as a matter law when it made a finding that Father "did commit some acts of abuse in the past," contrary to the doctrine of collateral estoppel and when the court did not make any specific findings as to what did or did not occur.

11. Whether the trial court abused its discretion and erred as a matter of law by denying Father the opportunity to admit evidence that was relevant to the court's analysis of the parties' credibility and motivations.

12. Whether the trial court abused its discretion and erred as a matter of law when it awarded Mother sole legal custody of the parties' three minor children.

Appellant's brief at 5-8 (cleaned up).

The following legal principles govern our review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings

of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018) (internal quotation marks omitted).

Pursuant to 23 Pa.C.S. § 5328, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S. § 5328(a). In entering any custody order, the trial court is to determine the best interests of the child through consideration of the following factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

- 8 -

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

"It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013). While a trial court must consider each of the statutory factors, "the amount of weight that a court places on

any one factor is almost entirely discretionary." ***O.G. v. A.B.***, 234 A.3d 766, 777 (Pa. Super. 2020). ***See also D.Q. v. K.K.***, 241 A.3d 1112, 1117 (Pa.Super. 2020) ("The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned." (cleaned up)). As we have explained:

> it is not this Court's function to determine whether the trial court reached the right decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party.

***E.B. v. D.B.***, 209 A.3d 451, 468 (Pa.Super. 2019) (cleaned up) (quoting ***King v. King***, 889 A.2d 630, 632 (Pa.Super. 2005)). ***See also D.Q. v. K.K.***, ***supra*** at 1117 ("[T]he knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.").

Father's first cluster of arguments concerns the propriety of the trial court's decision to place Mother in primary physical custody of the children. He commences by broadly averring that the trial court's determination as to physical custody was the product of an abuse of discretion and an error of law. ***See*** Father's brief at 25-28. He then raises a general challenge to the trial court's application of the statutory factors applicable to custody determinations. ***Id***. at 29-31. In his following five issues, Father then states

- 10 -

specific challenges to the trial court's reasoning and assessment of Father's credibility. *Id*. at 35-54. We consider these claims of error together.

In announcing its ruling, the trial court observed at the outset that, while the children love and feel safe with both parents, and both parents are loving and capable, the existing shared custody arrangement was not serving the best interests of the children. *See* Trial Court Opinion, 11/22/21, at 1. Since equal custody was no longer a viable option, one parent necessarily would have to be awarded more time than the other. *Id*. Upon this foundation, the court analyzed the statutory factors to enable it to determine which parent would better serve the children in that role. *Id*.

Upon undertaking this examination, the trial court found that factors ten (attending daily needs), thirteen (level of conflict between the parties), fifteen (mental and physical condition), and sixteen (other relevant factors, in this case, credibility and reliability in giving truthful reports) favored Mother, and four (stability and continuity), and twelve (ability to care for child) weighed heavily for Mother. The court concluded that factors one (encouraging contact) and five (availability of extended family) supported Father. *Id*. at 3-15 (applying evidence to factors); Confidential Supplemental Opinion, 11/22/21, at 1-4 (discussing the mental health aspects of factor fifteen). The trial court decided that the rest of the factors were either inapplicable or did not favor either party over the other. *See* Trial Court Opinion, 11/22/21, at 4-14. Of relevance to this appeal, in its analysis of

factor two (risk of harm to the child), the trial court opined that the parties were "equally capable of providing adequate physical safeguards" for the children, although it found that Father did commit the acts described by Mother that caused harm to two of the children. *Id*. at 9. The court reasoned that those facts did not carry weight in its analysis because Father has committed no abusive acts in the past three and one-half years, has properly cared for the children while they were in his custody, and the children did not express any concerns for their safety. *Id*. at 8-9.

Upon consideration of all the evidence, the trial court determined that the factors warranting the most weight were factors four (stability and continuity), twelve (ability to care for child), and thirteen (level of conflict between the parties). For example, in addressing factor four, the trial court stated as follows:

> The need for stability and continuity in the children's life is one of the most important factors in this case. The current "5 2 2 5" custody schedule, which both parents agreed to follow and which is described in the order of court regarding custody dated April 8, 2019, has resulted in instability and a lack of continuity for the children. The current schedule provides for short periods of custody time with each parent, the children being with their mother on most school days from 3:00 to 5:00 p.m., frequent custody exchanges during the school week, and the children spending a lot of time riding in cars.
>
> This schedule suits the interests of parents who agree to 50/50 custody, but it is unnecessarily complicated and confusing for the children. Many times, despite everyone's best efforts, the children forget homework and clothes that they will need for the next day. The current schedule is time consuming for the parents to execute and leads to disagreements and disputes, particularly with regard to school work and activities.

Both [Mother] and [Father] believe that it is in the best interests of the children to receive a quality education, to actively participate in extracurricular activities and sports, and to have good social relationships with peers. [Mother] has been supervising the children and assuring they complete and turn in their homework on time. Sometimes homework is not completed when the children return from their father's. That requires the children to get caught up within a short time and causes them unnecessary stress.

The children now attend Catholic school, but they will soon move into middle school in a public school district. [Mother] lives and will continue to live in the Seneca Valley School District. The oldest child has friends who will attend Seneca Valley Middle School and he is prepared and willing to attend that school as well. [Father] has moved to Sewickley, which is in a different school district. The children's friends at their current school will not go to that school. For these reasons, this factor weighs heavily in favor of [Mother].

*Id*. at 10-11 (cleaned up).

The trial court explained as follows concerning factor twelve:

Availability is a major factor in this case. [Mother] has a flexible work schedule, primarily works from home, and will maintain her residence in the area. She is available to transport the children to school and their activities.

On the other hand, [Father] is required to travel out of the area at times for his current jobs and it appears with restrictions because of COVID being lifted, he will be traveling more frequently. Significantly, [Father] is a leading candidate for United States Senate and will be traveling frequently as he campaigns throughout the [s]tate in preparation for the primary election next spring. He expects to win the primary election and will travel frequently as he campaigns for the fall general election. He expects to win the election and to reside parts of the year in Washington, D.C. These circumstances certainly restrict his ability to have primarily physical custody of the children.

Further, [Father's paramour] and her two daughters have within the past week begun residing full time with him. His family unit now includes the three of them. He devotes time to them, in

- 13 -

addition [to] time with . . . his own children. [Mother] resides alone with her children. Both parents can make appropriate childcare arrangements when they do not have custody.

This factor weighs heavily in favor of [Mother].

*Id*. at 13. As for factor thirteen, the trial court offered the following:

Unfortunately, there is a very high level of conflict between the parties. Both parties are equally at fault for refusing to communicate effectively and to reach compromise decisions regarding the needs of the children. Therefore, it is necessary for one of the parents to be primarily responsible for those decisions, until they demonstrate they are willing to communicate.

This factor weighs in favor of [Mother], as the parent who will have primary residential custody of the children and who has been and will be primarily responsible for meeting the children's educational needs.

*Id*. at 14.

Overall, the trial court found that both parents love their children and provide proper care. *Id*. at 1. However, as a result of this assessment of the relative merits of the parties' positions as to each factor, and of which factors were entitled to the greatest weight, the court concluded that the children's best interests were served by awarding primary physical and sole legal custody to Mother.

Initially, we observe that, in challenging the trial court's application of the factors to conclude that Mother should assume primary physical custody of the children, Father asserts throughout his arguments that his testimony was credible and, consequently, determinative of the issues in his favor. ***See***, ***e.g.***, Father's brief at 37, 41, 47, 52-53. Meanwhile, he largely fails to

- 14 -

acknowledge contrary evidence that supported the trial court's findings in favor of Mother. Father in effect asks this Court to view the evidence admitted at the modification hearing in the light most favorable to his position, to credit his testimony over Mother's, and to conclude that the trial court's failure to impose the week on, week off schedule that Father suggested was the only reasonable conclusion.[2] In this respect, Father "essentially ask[s] this Court to re-find facts, re-weigh evidence, and re-assess credibility. That is not our role." **D.R.L. v. K.L.C.**, 216 A.3d 276, 286 (Pa.Super. 2019). It is well-settled that "on issues of credibility . . . we defer to the findings of the trial court which has had the opportunity to observe the proceedings and demeanor of the witnesses." **K.D. v. E.D.**, **supra** at 1230 (cleaned up). Accordingly, we shall proceed to address Father's challenges to the trial court's analysis of specific factors only insofar as he complains that the trial court erred as a matter of law and made findings not supported by the record.

---

[2] While Father's pretrial proposed custody order suggested shared custody in alternating weeks, he instead advocated at the conclusion of the hearing for primary physical custody, claiming that Mother's hearing testimony caused him to believe that she is incapable of exercising sound judgment to keep the children safe. **See** N.T. Trial, 11/1-9/21 (Sealed Volume IV), at 265-69. Mother contends that Father is consequently estopped to argue that the trial court should have ordered shared physical custody, arguing: "Father cannot now take the position that the facts and the law support nothing other than a shared custody schedule." **See** Mother's brief at 19. **Id**. While we do not deem estoppel or waiver applicable, we observe that both parties' choice to advocate for abandoning the existing custody schedule supported the trial court's conclusion that the status quo not only was failing to serve the children's best interests but was no longer desired by either parent. **See** Trial Court Opinion, 11/22/21, at 1.

Father first argues that the trial court's finding that the 5-2-2-5 schedule was not working is not supported by the evidence. He maintains that "the only evidence presented regarding the challenges of the shared schedule were directly related to the afterschool 3:00 p.m. to 5:00 p.m. period." Father's brief at 36. Father credits his own testimony about how that aspect of the existing arrangement was the sole cause of any problems, as well as that of the children concerning items left behind during those transitions. *Id*. at 37-39. He further emphasizes that the children indicated that they preferred to maintain equal time with each parent. *Id*. at 38-39.

Father's claim is meritless. Father's own reiteration of the testimony concerning the confusion and stress of the frequent exchanges amply supported the trial court's conclusion that the existing schedule was not serving the children's best interests. Further, Father neglects to acknowledge that the 2019 custody schedule was created to give the at-issue afterschool time with Mother because, when the parties previously operated under the straight 5-2-2-5 schedule, the children did not complete their assignments during Father's custodial periods. We discern no abuse of discretion in the trial court's conclusion that neither the original shared custody schedule nor the modified 2019 arrangement was working for the children and that fewer transitions were warranted, such that placing the children with Mother on all school nights was in the children's best interests.

Father next argues that the trial court's finding that the children's need for stability is best served by residing primarily with Mother in their current school district is in irreconcilable conflict with its determination "that the distance between the parties' residences is not an impediment to an appropriate custody arrangement." Father's brief at 40.

Father's argument is unavailing. As Mother observes, "Father mixes apples and oranges in [this claim of] error, attempting to argue that proximity is equal to stability and continuity." Mother's brief at 30. We reiterate that both parties advocated against maintaining shared custody, and the record supports the trial court's conclusion that the status quo was not serving children's best interests. It unavoidably follows that a change from the unsatisfactory fifty-fifty arrangement would place the children primarily with one parent or the other. As such, the distance between the residences is a wholly distinct question from whether the children's needs for continuity and stability would be better served by remaining in the district in which they have lived throughout their lives, or uprooting them from their existing school district and the ability to attend middle and high school with their private school friends who would also transition to public school. Father's argument that the children could still attend middle school and high school in the Seneca Valley School district if they resided with him as often as with Mother is premised on the rejected foundation that a shared custody schedule is appropriate. Thus, no relief is due.

Next, Father asserts that the trial court "abused its discretion and erred as a matter of law when it speculated as to Father's travel schedule and future unavailability, which was based on the court's own presuppositions and not based on the evidence or testimony presented." Father's brief at 44. In so doing, Father relies primarily upon portions of his own testimony, which he describes as credible despite the trial court's express finding to the contrary. That evidence, Father argues, established that he was able to arrange his travel to be available for the children during his custodial periods, and that no major changes to that availability would occur at least until January 2023 when the new U.S. Senator took office. *Id*. at 48.

Our review of the record reveals Father's contentions to be baseless. Father testified that his job with Fairway Mortgage required him to be on call twenty-four hours a day, seven days a week. *See* N.T. Trial, 11/9/2021, at 465. While his work travel lessened considerably during the earlier phase of the COVID-19 pandemic, he acknowledged that travel for Fairway was resuming. Father further testified that his campaign for Senate, and service in Congress, would involve "a great deal of travel." *Id*. at 473. If Father prevailed in the primary and the general election, which Father testified that he believed would happen, he would have to be in Washington, D.C. for more than one hundred weekdays per year. *Id*. at 475. Further, as Mother observes, Father's suggestion "that the family would not need to worry about his Senate schedule until January 2023 demonstrates [his] lack of foresight

- 18 -

and consideration for the stability of the children," in "suggest[ing] that the custody schedule could be subject to change **yet again** in a year." Mother's brief at 34 (emphasis in original). Accordingly, the trial court's findings as to travel are founded upon record evidence and reasonable inferences therefrom, not upon conjecture.

Father next posits that the trial court's reference in its analysis of factor thirteen to Mother being the parent "who will have primary residential custody of the children" revealed "that the court had predetermined that Mother would be awarded primary physical custody and conducted its analysis based upon that presumption and not based upon the evidence and testimony admitted as to the parties' current custody arrangement." Father's brief at 49. Father maintains that affirming a decision reached by a trial court before it considered all of the statutory factors "would be dangerous." *Id*. at 51.

We find no indication that the trial court's opinion evinced an improper predetermination of the result. Rather, as Mother observes, the trial court's analysis as a whole indicates that it found that the parties were equally to blame for a level of conflict that precluded them from sharing decision-making authority. Accordingly, the trial court concluded that one parent or the other must be given sole legal custody. Since the weighing of the factors as a whole led the court to believe that allowing Mother to exercise primary physical custody was in the children's' best interests, giving Mother primary legal

authority to make the decisions concerning the children's education and health was most appropriate. **See** Mother's brief at 24, 36.

We agree with Mother that the trial court's analysis of factor thirteen did not appear to impact its physical custody decision one way or the other. Rather, the trial court cited its ultimate decision to make Mother the primary physical custodian, which was based upon consideration of all the factors, as its basis for resolving the question of legal custody in Mother's favor. Hence, Father's argument as to factor thirteen does not justify disturbing the trial court's ruling as to physical custody.

Finally, Father avers that the trial court committed reversible error in weighing factor fifteen against Father. In particular, Father asserts that the court improperly found that Father did not agree to counseling when he "testified on a number of occasions that, historically, he not only supported the children's mental health treatment, but suggested it." Father's brief at 52. Father also argues that, given the trial court's finding that Mother generally failed to communicate with Father about the children's health and specifically did not inform Father of an acute mental health crisis that one of the children experienced, it is unfair to fault Father for failing to act when he lacked "all necessary information available to make an informed decision regarding the children's counseling needs." *Id*.

No relief is due. The trial court credited Mother's testimony that the anxiety of one of the children was being addressed through counseling before

and after the separation, and that both parties agreed for all children to receive counseling following the separation, but Father in 2019 determined that the counseling at that location should cease. *See* Confidential Supplemental Opinion, 11/22/21, at 1. Father conceded that he informed Mother that any further counseling had to be at Mother's expense and during her custodial periods. *See* N.T. Trial, 11/1-9/21 (Sealed Volume IV), at 273-74. Although Father had acknowledged that the child in question had ongoing concerns and had indeed been in crisis in 2019, *see id*. at 282, and Mother informed Father that the child was exhibiting behaviors raising increasing mental health concerns, *see id. at* 274-77, Father would not agree to counseling. He dismissed Mother's concerns, insisting that the child instead was "a good kid," and he chastised Mother for what he interpreted as "calling [the child] broken" and questioning the child's sanity. *Id*. at 277-79. It was after Father's repeated refusals over a two-year period to agree to the child continuing with the established counselor that the incident in question occurred in early 2021.

Father's complaint that he did not have the necessary information to make an informed decision about the children's need for counseling is unavailing. Mother conveyed information to Father about the child's condition before the 2021 incident, and Father did not act, believing, despite Mother's concerns, that the children "weren't doing so bad that they needed therapy." *Id*. at 274. Indeed, Father worried at the hearing that a record of the mental

health issues could damage the child's future dating prospects or ability to join the military. *Id*. at 237-38. The fact that Father would have agreed to counseling after the incident in no way explains away his refusal to address the ongoing problem for the two years before the incident. Accordingly, we conclude that the trial court's determination that Father's reluctance to ensure that the children receive counseling rendered Mother better suited to attend to the mental condition of the children is both supported by the certified record and a reasonable exercise of the trial court's discretion.

Father's remaining factor-based issues concerning physical custody pertain to the trial court's analysis of factor two (present and past abuse). Father claims that the trial court erred in allowing Mother to offer testimony and other evidence about abuse that Father purportedly perpetrated prior to the parties' separation, and in "finding that Father did commit some acts of abuse in the past," because the doctrine of collateral estoppel precluded the trial court from revisiting the PFA court ruling that the allegations did "not rise to the level of abuse." Father's brief at 32. Father also contends that the trial court erred in precluding him from offering evidence that called Mother's credibility into question. *Id*. at 56.

As mentioned above, the trial court considered and credited Mother's allegations that Father had been physically and verbally abusive during the marriage, and on two instances had caused harm to a child in the home. The court found Father to be less credible because he simply denied that most of

the incidents happened, which was unbelievable in light of the other evidence; he was evasive; he did not look at the court when testifying, but instead at the members of the news media or his attorneys; and he appeared unduly casual, suggesting a lack of "respect for the seriousness of the occasion." Trial Court Opinion, 11/22/21, at 8. Nonetheless, the trial court determined that factor two was neutral in the analysis. In particular, the court concluded that, since the instances were remote in time and no further incidents occurred since the separation, Father was presently just as capable as Mother, against whom there was no evidence of abuse, of providing a safe environment for the children. *Id*. at 8-9.

Father finds it "curious" that the trial court did not weigh this factor against Father in light of the past abuse, and "confounding" that it found the factor neutral. Father's brief at 54. He suggests that there was no need to discuss the allegations in depth since the trial court concluded that they "were not relevant." *Id*. Father further complains that "the trial court erred as a matter of law by finding that Father lacked credibility based upon his denial of factual allegations raised by Mother without detail, his attire, and the direction in which Father looked in the courtroom while testifying." *Id*. at 54. Specifically, Father states that a simple denial is all he could offer because it is impossible to prove a negative, rendering the trial court guilty of "a logical fallacy" and bemoans that this calls into question "whether every litigant who

enters a courtroom must be draped in a designer suit in order to be believed by the finder of fact." *Id*. at 55.

What we find curious and confounding is why Father has raised and argued three separate issues that plainly had no impact on the trial court's custody determination and, thus, have no bearing on the outcome of this appeal. "To constitute reversible error, an evidentiary ruling must be both erroneous and prejudicial to the complaining party." *A.J.B. v. M.P.B.*, 945 A.2d 744, 751 (Pa.Super. 2008). Even if we agreed with him in all aspects on his factor two argument, the result would be the same, namely a factor that favors neither Mother nor Father. Since the ruling did not result in prejudice to Father, any error was harmless.[3]

---

[3] In any event, we discern no error as to the collateral estoppel issues for the reasons stated by the trial court. *See* Trial Court Opinion, 12/29/21, at 1-2 (explaining that collateral estoppel did not apply because the issues were not identical). Nor did the trial court err in its assessment of Father's credibility. Father points to nothing in the certified record to call into question the accuracy of the trial court's description of Father's demeanor, such as his casual attitude toward the proceedings and disinclination to look at the fact-finder when testifying. Moreover, there is ample evidence in the certified record to support the trial court's finding that Father was evasive. For example, Father testified that Mother "wasn't even there" when the incident giving rise to the second PFA petition occurred in a closet in the master bedroom. In the course of cross-examination that is excruciating to read, Father maintained that Mother's office, which a photograph showed to be fully open to the main area of the master bedroom with no door and a clear view of the bedroom, was "a separate room in the master bedroom," as was the closet within the master bedroom "a separate room." *See* N.T. Trial, 11/9/2021, at 449. It is on this basis that Father asserted that Mother "wasn't even there" for the incident despite her undisputed presence in an area that had no wall or other obstruction to separate her from Father and the child.

Finally, Father is entitled to no relief on his claim that the trial court improperly excluded evidence he believes "was relevant to the court's analysis of the parties' credibility and motivations." Father's brief at 56. "Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *E.K. v. J.R.A.*, 237 A.3d 509, 522–23 (Pa.Super. 2020) (cleaned up). "We will not find an abuse of discretion merely because a reviewing court would have reached a different conclusion." *K.D. v. E.D.*, 267 A.3d 1215, 1230 (Pa.Super. 2021) (cleaned up). "Rather, appellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id*. (cleaned up).

The trial court aptly observed that Father failed to identify in his Rule 1925(a)(2) statement what evidence it had "denied him the opportunity to admit" and therefore it was "unable to respond to this allegation of error." Trial Court Opinion, 12/29/21, at 5. It is well-settled that "[a] concise statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal." *Mazurek v. Russell*, 96 A.3d 372, 377 (Pa.Super. 2014). "[A] concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no concise statement at all." *S.S. v. T.J.*, 212 A.3d 1026, 1031

(Pa.Super. 2019) (cleaned up). Issues not raised in compliance with Rule 1925 are waived. *Id*. Since Father did not state his claim of error with sufficient specificity to allow the trial court to identify the evidence in question and explain the reasons for its ruling, we are unable to determine whether any abuse of discretion occurred. Therefore, the issue is waived.

For the above reasons, we are unpersuaded by any of Father's arguments that the trial court committed an error of law or abuse of discretion in ordering Mother to assume primary physical custody of the children. Therefore, we affirm that portion of the trial court's November 22, 2021 order.

Father's remaining question is whether that the trial court erred in concluding that its weighing of the statutory factors warranted granting Mother sole legal custody of the children. The trial court's order provided as follows as to legal custody:

> [Mother] shall have sole legal custody of the three subject minor children. Sole legal custody means the sole right to make major decisions on behalf of the children, including, but not limited to, medical, religious[,] and educational decisions. [Mother] and [Father] are each entitled to full access to any records relating to the children held by a third party, including but not limited to school records and medical records.
>
> When [Mother] makes a medical, dental, educational[,] or other appointment for a child[,] she shall provide [Father] with notice of the appointment within twenty-four hours of making the appointment. Both parents may then attend the appointment if they wish to do so.

Order, 11/22/21, at ¶ 1 (cleaned up).

Father asserts that "[a]wards of sole legal custody to one parent are rare," and that, "even in high conflict cases, Pennsylvania Courts strive to avoid such awards so as to protect each parent's fundamental right to participate in their children's upbringing." Father's brief at 20. He largely relies on decisional law from the 1980s, long before § 5328 was enacted to render the prior, distinct test in examining the propriety of legal custody obsolete.[4] *See S.T. v. R.W.*, 192 A.3d 1155, 1170 (Pa.Super. 2018).

Contrary to Father's suggestions, our examination of a legal custody order is no different than a physical custody order, which, we reiterate, is as follows:

> Our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial

---

[4] The prior legal custody factors were as follows:

> (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and be able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; (4) whether a minimal degree of cooperation between the parents is possible.

*S.T. v. R.W.*, 192 A.3d 1155, 1170 (Pa.Super. 2018) (cleaned up).

- 27 -

court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court.

*B.S.G. v. D.M.C.*, 255 A.3d 528, 533 (Pa.Super. 2021) (cleaned up).

In employing this familiar standard of review, this Court has repeatedly affirmed the award of sole legal custody to one parent in instances where the trial court's factual findings and consideration of the § 5328(a) factors were supported by the record. *See*, *e.g.*, *Packirisamy v. Suresh*, 262 A.3d 551, 2021 WL 3702580 at *18 (Pa.Super. 2021) (non-precedential decision) ("[T]he record supports the trial court's factual findings and consideration of the Section 5328(a) factors, and we will not reweigh the evidence in favor of Father's request for joint legal and physical custody."); *A.J.D. v. E.K.*, 1402 WDA 2019, 2020 WL 1490833, at *4 (Pa.Super. 2020) (non-precedential decision) (affirming order granting the father sole legal custody where the trial court's conclusions as to the factors were supported by the record). We reverse a decision as to sole legal custody if the trial court's factual findings are not supported by the record. *See*, *e.g.*, *E.W.L. v. L.V.D.G.-L.*, 237 A.3d 1031, 2020 WL 2919240 at *9 (Pa.Super. 2020) (non-precedential decision).

Accordingly, we consider the arguments that Father raises to determine whether the trial court abused its discretion. Father acknowledges that "there is no dispute that the parties have a conflictual relationship," but observes that conflict is common in custody matters. Father's brief at 22. He cites two examples of times he and Mother were able to agree on a matter, namely to take the children to their initial counselor "when it became clear to Father that

the children were in need of counseling following the parties' separation," and to having the children be seen by the school counselor when the original counseling "no longer became tenable [sic]." *Id*. He further cites as important that "the parties also managed a shared custody arrangement for over three years." *Id*. (cleaned up).

The remainder of Father's argument does not speak to whether it was unreasonable for the trial court to conclude that the parties were incapable of the minimal degree of cooperation necessary to exercise shared legal custody. Rather, Father asks this Court to reject the trial court's conclusion that the parties are equally at fault for the conflict and instead accept his own testimony about his ability to coparent with Mother and conclude Mother is the problem.[5] *Id*. at 22-23 ("The uncontroverted evidence presented at trial demonstrates that Father is, and has been, willing and able to coparent with

---

[5] In pinning the blame for the conflict on Mother, Father contends that Mother had the children wear t-shirts that stated, "Don't Be A Richard." Father's brief at 23 (citing N.T. Trial, at 320). Mother acknowledged that in 2018 she had the shirts made for herself and a group of friends who all were unhappy with Richards in their lives but contended that the shirts were then merely stuffed in a drawer somewhere. The certified record contains no evidence to support Father's representation that the children even saw the shirts, let alone that Mother "had the children wear" them. Father's other specific example is that Mother had Father's contact information saved in her phone under the name "Not Nice." Mother acknowledged that she had done this for a brief time early after the separation, around the time Father called her a "fat lesbian" in front of the children. *See* N.T. Trial, 11/1/21, at 130; N.T. Trial, 11/8/21, at 294-95; N.T. Trial, 11/1-9/21 (Sealed Volume IV), at 10. Neither of these allegations furthers Father's argument that the trial court abused its discretion in granting legal custody to Mother.

Mother. . . . On the other hand, it is clear that Mother cannot overcome her animosity for Father, inhibiting an effective coparenting relationship."); *id*. at 23 ("Mother accuses Father of making unilateral decisions; however, the evidence clearly demonstrated that she is the one who does so."). Father concludes as follows:

> Entirely absent from the record is any evidence indicating that Father is in some way incapable of making appropriate decisions for the children or that Father has historically made decisions that are somehow contrary to the best interest of the children. Rather, Father offered substantial and credible testimony and evidence that he plays an active role in meeting the children's daily needs, including their educational needs. Thus, to deprive him of decision-making ability constitutes an egregious deprivation of Father's fundamental rights.

*Id*. at 24-25 (cleaned up).

None of Father's arguments convinces us that the trial court committed an abuse of discretion in placing sole legal custody with Mother. Rather, we conclude that the certified record amply supports the trial court's factual finding that both parties are responsible for the conflict and that they have an inability "to communicate effectively and reach compromise decisions regarding the needs of the children." Trial Court Opinion, 11/22/21, at 14.

In addition to the details about the parties' inability to compromise on mental health care, the testimony at the custody trial was rife with the parties' complaints and allegations of one parent not keeping the other in the loop about appointments and other activities, as well as other "he said, she said" disputes that were contested or confirmed by reference to text messages and

Our Family Wizard messages. The evidence reveals that while, as the trial court observed, the parties generally share the same values about the children's education and participation in extracurricular and social activities, *id*. at 10, they manifest a chronic inability to agree about how to effectuate those values. The certified record also supports the trial court's finding that Father unilaterally re-enrolled all three children in private school although the governing custody order specified that the parties were to discuss transitioning the eldest child to public school for seventh grade. ***See*** N.T. Trial, 11/1/21, at 198-99.

Father's suggestions that the parties had been able to coparent despite the conflict are not supported by the record. Father's agreement to the children's initial post-separation counseling was, as he acknowledges, only given after "it became clear to Father that the children were in need of counseling," not as a result of cooperative coparenting. Father's brief at 22. As discussed above, Mother's repeated alerts to the children's counseling needs were dismissed by Father. The switch to the school counselor when the initial arrangement became "no longer . . . tenable," was, in effect, the result of Father's unilateral decision because he withdrew his consent and willingness to pay. ***See*** N.T. Trial, 11/1-9/21 (Sealed Volume IV), at 174, 272. Moreover, his reliance on the fact that "the parties also managed a shared custody arrangement for over three years" is misplaced here where, as discussed above, that shared management failed to serve the children's best

interests, most obviously as to their mental health needs, based upon the parties' inability to agree.

Finally, to the extent that Father again asks this Court to find him credible, despite the trial court's express indication on multiple occasions that he was not, that is not the role of this Court. **See**, **e.g.**, **E.B. v. D.B.**, **supra** at 468.

We are not unsympathetic to Father's desire to participate in decisions about the children's school, religion, and medical providers. Nonetheless, even if we might have reached a different conclusion as to legal custody were we deciding the matter in the first instance, we cannot impose our view where, as here, the trial court's conclusion is reasonable in light of its credibility determinations and sustainable findings of fact.[6] **See B.S.G. v. D.M.C.**, **supra** at 533.

---

[6] Important in our conclusion that the trial court's order is reasonable is that, although the court ruled that Mother shall have the authority to make medical, religious, and educational decisions for the children, its order ensures that Father will remain fully informed and able to participate in these matters. Consequently, should Father believe that Mother utilized her authority in a manner contrary to the children's best interests, he will have ample notice to seek court intervention if he deems it necessary. Additionally, we observe that the award of sole legal custody to Mother, as with any custody order, is not immutable. Indeed, the trial court noted that it was only necessary based on the current volatility between the parties and could be changed when "they demonstrate they are willing to communicate." Trial Court Opinion, 11/22/21, at 14.

Therefore, because Father has presented us with no cause to disturb the trial court's order as to legal custody of the children, we affirm that portion as well as that granting Mother primary legal custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2022