J-A02036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| KAYLA C. TALIK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORDAN J. MEALS | : | No. 1025 WDA 2024 |

Appeal from the Order Entered August 15, 2024
In the Court of Common Pleas of Butler County Civil Division at No(s):
2016-90715

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED: March 4, 2025**

Kayla C. Talik ("Mother") appeals from the custody modification order related to K.O. ("Child"), which awarded Jordan J. Meals ("Father") and Mother shared legal custody and Father primary physical custody of Child during the school year.[1]  Mother challenges the weight of the evidence regarding the trial court's consideration of the custody factors of the Child Custody Act,[2] 23

---

[1]  Although this appeal involves a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken."  Pa.R.A.P. 904(b)(1).  "[U]pon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child."  Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a).  Neither party applied for the use of initials in the caption.  We will, however, refer to the minor involved in this custody dispute as "Child" to protect her identity.

[2]  23 Pa.C.S. §§ 5321-5340.

Pa.C.S. § 5328(a); the trial court's specific findings with respect to subsections (a)(2) and (3); and the trial court's decision to not conduct an analysis under subsection (a)(2.1). We affirm.

Mother and Father are the natural parents of Child. Mother and Father began dating in April 2014 and Mother became pregnant with Child in May 2015. Child was born in February 2016. Mother and Father never married, shared a tumultuous relationship throughout 2016 and 2017, and permanently separated in June 2017. At that time, Mother resided in Butler County and Father moved to Cumberland County. From June 2017 until August 2022, the parties agreed that they would have shared legal custody of Child and that Mother would have primary physical custody of Child during the school year.

Mother subsequently married Matthew Owens ("Stepfather") with whom she has one daughter, Child's half-sister. Stepfather also has two daughters from a previous relationship. Father later married Amy Meals ("Stepmother") with whom he has one son, Child's half-brother. Stepmother has one son from a previous relationship. Father also has another daughter from a relationship predating his time with Mother.

In August 2022, Father filed a petition pursuant to the Protection From Abuse ("PFA") Act[3] against Mother and Stepfather. The trial court summarized the remaining procedural history of the case as follows:

A temporary PFA was issued against Mother … and [Stepfather] in August of 2022 after Father's family overheard [Child] … stating to her half-sister that [Stepfather sexually] abused her. [Child] had previously primarily resided with Mother and attended school in Butler County. Following the PFA, [Child] has primarily resided with Father … and attended school in Cumberland County. The PFA against Mother was dropped on March 10, 2023. On March 13, 2023, a petition for modification of custody was filed by Mother against Father concerning [Child]. Father subsequently filed a counterclaim. The parties attended an unsuccessful custody conciliation on June 6, 2023. A hearing on the PFA against [Stepfather] was held the same day on June 6, 2023, where [Child] testified to the court. A final PFA was entered against [Stepfather] that date for a period of two years. The parties appeared for a pre-trial conference on September 26, 2023. A custody trial was scheduled to commence on November 21, 2023, but was continued to June [4 and 5, 2024] by a consented to agreement by the parties. Trial was held on those dates, and an additional day of trial was scheduled and heard on July 31, 2024. The parties were directed to file and serve on the court findings of fact and conclusions of law by August 7, 2024.

Trial Court Opinion, 8/15/2024, at 1-2 (unnecessary capitalization omitted).

On August 15, 2024, the trial court entered an order providing Mother and Father with shared legal custody of Child and Father primary custody of Child during the school year. Mother timely appealed to this Court and complied with Pennsylvania Rule of Appellate Procedure 1925. Mother presents the following issues for review:

---

[3] 23 Pa.C.S. §§ 6101-6122

1. Did the trial court err in its analysis of 23 Pa.C.S.[] § 5328(a)(2), as there is no continued risk of harm to [Child] in Mother's care[?]

2. Did the trial court err in failing to complete a 23 Pa.C.S.[] § 5328(a)(2.1) analysis regarding the consideration of child abuse and involvement of child protective services, when presumably an award of primary custody was made to Father on the basis of a PFA[?]

3. Did the trial court err in its analysis of 23 Pa.C.S.[] § 5328(a)(3), as it fails to provide for the parental duties provided for by Mother from the time [Child] was born until August 2022, nor does it expand on who performs the parental duties while [Child] is at Father's residence[?]

4. Did the trial court err and/or abuse its discretion in reaching the order of court awarding Father primary custody, against the weight of the evidence, the court's credibility determinations, and the court's determination of the custody factors[?]

5. Did the trial court err and/or abuse its discretion in reaching the order of court awarding Father primary custody, which unreasonable in light of the sustainable findings of the court[?]

6. Did the trial court err in its conclusion that Father shall be awarded primary custody of [Child], based upon the court's analysis of the custody factors, which largely favor Mother[?]

Mother's Brief at 20 (unnecessary capitalization and typographical errors omitted).[4]

Our standard of review in this case is deferential:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the

_____

[4] We reordered the issues for ease of review.

weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

***C.A.J. v. D.S.M.***, 136 A.3d 504, 506 (Pa. Super. 2016) (citation omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." ***Rogowski v. Kirven***, 291 A.3d 50, 61 (Pa. Super. 2023) (quotation marks and citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). To that end, the Child Custody Act sets forth nineteen factors that a court must consider prior to modifying an existing custody order. ***See*** 23 Pa.C.S. § 5328(a). "All of the best interest factors ... are required to be considered by the trial court when entering a custody order." ***D.Q. v. K.K.***, 241 A.3d 1112, 1118 (Pa. Super. 2020) (citation and brackets omitted). While a court's consideration of these factors is mandatory, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa. Super. 2019). (citation omitted).

The statutory factors in effect at the time of the custody hearing were as follows:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

- 5 -

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a) (effective Jan. 1, 2014 to Aug. 12, 2024).

In her first issue, Mother argues that the trial court erred in finding that factor (a)(2) favored Father. Mother's Brief at 30-32, 45-50. Specifically, Mother contends that there is no record support for the trial court's finding that her household contains a member with a history of abuse. *Id.* at 32. Mother maintains that she has resided in an apartment separate from the marital residence and that Child never has any contact with Stepfather. *Id.* at 30-31. Additionally, Mother argues that because there was no substantiated finding of abuse on the part of Stepfather, there was no evidence that Stepfather presented any threat of harm to Child. *Id.* at 45-50.

In rejecting this claim, the trial court explained:

Mother states the [c]ourt improperly assessed 23 Pa.C.S.[] § 5328(a)(2) in its analysis, which concern[s] "present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse." Mother's current husband, [Stepfather], has a final PFA entered against him precluding contact between him and Father and Child. Mother has acquired an apartment separate from the marital residence to use when she exercises her custody. Mother when she is not exercising custody regularly inhabits the martial residence with [Stepfather]. Mother's own witness testified to her staying overnight at the martial residence when she is not with [Child]. [Stepfather] remains a member of Mother's household even if she is properly isolating him from the child as mandated

- 7 -

by the final PFA order. Mother also previously had a temporary PFA against her that was subsequently dropped. There is no alleged abuse committed by Father. In light of these facts, it clear that this factor could only ever favor Father in a custody analysis under § 5328(a).

\* \* \*

The court is to give factors that affect [Child's] safety weighted consideration. Two judges interviewed Child concerning the alleged abuse, the Honorable Matthew P. Smith of the Cumberland County Court of Common Pleas, and the undersigned. Both Judges found [Child's] testimony to be credible enough to grant a PFA against [Stepfather]. The court in its two interviews of [Child], once for the final PFA on June 6, 2023, and once during the custody trial at issue on June 4, 2024, found [Child] to be competent and credible. [Child] in her interview spoke candidly of the alleged abuse she suffered and in both interviews expressed her uneas[e] at the prospect of being in contact with [Stepfather] again. Mother primarily utilizes her apartment when with [Child] and continues to be married to and cohabitate with the child's alleged abuser. Child recounted in her interview that she has on multiple occasion been left in … Mother's apartment alone for brief periods while Mother went into the nearby marital residence of Mother and [Stepfather]. Mother actively disbelieves her Child's testimony to the court concerning the abuse she suffered. In light of these facts, the court is concerned that Mother will attempt to reunite [Child] and her husband [Stepfather] if she is granted primary custody, and seek to remerge the two families she currently maintains.

Trial Court Opinion, 8/28/2024, at 2-3, 5 (unnecessary capitalization omitted).

There is no dispute in this case that the trial court entered a final two-year PFA order against Father. *See* Mother's Brief at 30. At the PFA hearing in Cumberland County, Child testified that she feared Stepfather all the time because "he stuck his wiener in my mouth" several times when she was four years old and again when she was six years old. N.T., 6/4/2024, Exhibit A (N.T, 3/10/2023, at 19-20, 22, 24); *see also* N.T., 6/5/2024, at 38-39. While

- 8 -

the record does not contain any indication of criminal charges against Stepfather or a substantiated finding of abuse by Butler County Children and Youth Services ("CYS"), Child ultimately testified before the trial court in this case, the trial court found Child's testimony credible, and granted a final two-year PFA. *See* Trial Court Opinion, 8/28/2024, at 5.

Additionally, contrary to Mother's assertions, the record contains evidence that she continues to reside at the marital home with Stepfather. Mother's neighbor, Lauren Knights, testified that Mother resides at the marital home whenever she does not have custody of Child. N.T., 6/4/2024, at 136. Mother herself admitted that she was at the marital residence often and was there at odd hours. N.T., 6/5/2024, at 155. Moreover, the record reflects that Mother does not believe Child's allegations of sexual abuse against Stepfather. Mother testified that she believed Child "was told a story. And that [Child] believed that story because she was told it multiple times. I believe this [is] [Stepmother]'s story, because [Stepmother] was sexually abused as a child." *Id.* at 168.

With respect to her claim that Stepfather presents no threat of harm to Child because there was no substantiated finding of abuse in this case, Mother cites *K.D. v. E.D.*, 267 A.3d 1215 (Pa. Super. 2021). In *K.D.*, the mother and the children made several allegations of physical, mental, and sexual abuse by the father of the children. *Id.* at 1219. While the trial court ultimately found no support for the allegations of sexual abuse, it initially

- 9 -

denied the father supervised visits with the children based on his admission to administering severe corporal punishment. *Id.* at 1219-20. Over three years later, the father petitioned for supervised partial custody of the children after the oldest child recanted the allegations of sexual abuse and after the father had undergone several years of psychiatric and psychological counseling. *Id.* at 1221. The trial court granted the father's request. *Id.* We affirmed and determined, inter alia, that the record supported the trial court's decision to permit partial supervised custody in light of the oldest child recanting his accusations of abuse, the child's admission that the mother coerced him to make those accusations, and the father's participation in years of psychiatric counseling. *Id.* at 1227-29. We also concluded that the trial court's "analysis relative to whether [the father] currently presents a threat of harm to the children is careful, thorough, and reasonable, as shown by the evidence of record, and we discern no abuse of discretion." *Id.* at 1234-35.

*K.D.* is readily distinguishable from this case. While there has not been a substantiated finding of abuse against Stepfather, Child has at no point recanted her allegations of sexual abuse against Stepfather and, in fact, continues to maintain that the abuse occurred. *See* N.T., 6/5/2024, at 38-39. Moreover, distinct from *K.D.*, there is no evidence that Stepfather has undergone any type of counseling and there continues to be an active PFA against him with Child as the protected party. Accordingly, we find Mother's reliance on *K.D.* unavailing.

The record contains evidence supporting the trial court's findings that Child credibly testified that Stepfather sexually abused her, that Mother still primarily resides with Stepfather at the marital home, and that Mother does not believe Child's allegations of sexual abuse by Stepfather. On that basis, we conclude that the trial court did not abuse its discretion in determining that factor (a)(2) favors Father.

For her second issue, Mother argues that the trial court erred in declining to conduct an analysis of factor (a)(2.1). Mother's Brief at 36-41. Mother asserts that because there was no substantiated finding of abuse by Stepfather, even if Child believed the Stepfather abused her, there was no evidence the abuse actually occurred. *Id.* at 38. Thus, Mother contends the trial court should have analyzed factor (a)(2.1). *Id.* at 36-41.

Section 5328(a)(2.1) requires the court to consider a child's involvement with protective services. 23 Pa.C.S. §§ 5328(a)(2.1), 5329.1(a). In rejecting Mother's claim relating to factor (a)(2.1), the trial court explained:

> An analysis under this section would involve examination of whether [Child] suffered child abuse, the circumstances of that abuse, and if a member of the party's household was the perpetrator. The parties indicated at the trial that [CYS] had completed an investigation and that it was unfounded. In light of this finding, the court declined to do an analysis as it was moot. … This section could only ever weigh against Mother given the circumstances of the case and the existence of the final PFA. There is no allegation of this type against Father. The court declining analysis was recognition that [the] CYS investigation did not agree with the allegations of abuse that [Child] testified to the court on three separate occasions to two different judges. It was in Mother's favor that the court deemed this factor moot.

Trial Court Opinion, 8/28/2024, at 2-3 (citation and unnecessary capitalization omitted).

As the trial court recognized, factor (a)(2.1) requires the custody court to determine:

> (1) With respect to child abuse under Chapter 63 (relating to child protective services) or a child who is a victim of a crime under 18 Pa.C.S. (relating to crimes and offenses) which would constitute abuse under Chapter 63:
>
>> (i) Whether the child is the subject of an indicated or founded report of child abuse.
>>
>> (ii) Whether a party or a member of the party's household has been identified as the perpetrator in an indicated or founded report of child abuse.
>>
>> (iii) The date and circumstances of the child abuse.
>>
>> (iv) The jurisdiction where the child abuse investigation took place.

23 Pa.C.S. § 5329.1(a)(1); *see id.* § 5328(a)(2.1). As CYS conducted an investigation and deemed the report unfounded and there have been no criminal charges against Stepfather related to Child's reported abuse, we agree with the trial court's determination that a section 5328(a)(2.1) analysis was unnecessary in this case, and Mother offers no authority that supports her contrary claim. *See* Mother's Brief at 36-41. At best, this factor would be neutral as to the custody determination.[5] We therefore conclude that the

---

[5] We agree with the trial court that its consideration of this factor would not have weighed in Mother's favor as she seemingly contends. Unlike Mother,
*(Footnote Continued Next Page)*

trial court did not abuse its discretion in declining to delve into an analysis under section 5328(a)(2.1).

Mother next argues that the trial court erred in its finding that subsection (a)(3) favored Father. Mother's Brief at 32-36, 51-53. Mother maintains that the evidence demonstrates that despite having had primary custody of Child since August 2022, Father performs few parental duties because of his demanding work schedule. *Id.* at 32-36. She contends that the trial court

_____

there have never been allegations of abuse of Child by Father or a member of Father's household. Mother appears to view the unfounded report as proof positive that Child was lying. That simply is not an accurate reflection of the law in this area. Moreover, though not before this Court on appeal, we note that the definition of a "founded report" includes, in relevant part:

> A child abuse report involving a perpetrator that is made pursuant to this chapter[] if … [a] final protection from abuse order has been granted under section 6108 (relating to relief), when the child who is a subject of the report is one of the individuals protected under the protection from abuse order and:
>
> (i) only one individual is charged with the abuse in the protection from abuse action;
>
> (ii) only that individual defends against the charge;
>
> (iii) the adjudication involves the same factual circumstances involved in the allegation of child abuse; and
>
> (iv) the protection from abuse adjudication finds that the child abuse occurred.

23 Pa.C.S. § 6303(a)(4). Child currently has an active PFA against Stepfather based upon her disclosure of sexual abuse committed by him against her. Further, as the trial court makes clear in its assessment, it believed Child's testimony that the sexual abuse she alleged did occur.

- 13 -

overlooked the evidence of everything she did for Child before August 2022, the time during which she had primary physical custody of Child and that the trial court improperly applied the "primary caretaker doctrine" in determining that subsection (a)(3) favored Father merely because he already had primary custody of Child.  *Id.* at 51-53.

Under the "primary caretaker doctrine," which dates back forty years, "where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker."  *M.J.M.*, 63 A.3d at 337 (citation omitted, formatting modified).  In *M.J.M.*, this Court recognized that our General Assembly enacted "major revisions" to the Child Custody Act in 2011, which included the addition of section 5328, which, as discussed above, "sets forth a list of factors that a trial court must consider when making a custody determination." *Id.* at 338.  Consequently, we explained that the primary caretaker doctrine is "no longer viable" because it has been incorporated into the section 5328 custody factor analysis.  *Id.* at 339.  In particular, "the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day to day care for a young child) is addressed implicitly" in custody factors (a)(3) and (4).  *Id.* (citing 23 Pa.C.S. 5328(a)(3) ("The parental duties performed by each party on behalf of the child."), (4) ("The need for stability and continuity in the child's education, family life and community life.").  Thus, "a trial court will necessarily consider a parent's status as a primary caretaker

implicitly as it considers the section 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so[.]" *Id.*

With respect to factor (a)(3), the trial court stated:

The child for the past two years has been in the exclusive or primary care of the father. During this time, Mother only had supervised visitation for the first year. In the most recent year, Mother has had two weekends a month with some additional time during the holidays. Mother and Father agreed to share summer custody this year and did equal two[-]week splits. [Section] 5328(a)(3) is about the day[-]to[-]day care of the child. … Mother has simply not had the requisite custodial time to be favored in this factor. The court cedes that in the early portion of [Child's] life, Mother provided more of the day[-]to[-]day care, given she had primary custody. Since [Child] has been school age[,] however, Father has been the party who has provided the most day[-]to[-]day care of [Child].

Trial Court Opinion, 8/28/2024, at 2 (unnecessary capitalization omitted).

We disagree with Mother's claim that the trial court improperly applied the primary caretaker doctrine and found that factor (a)(3) favored Father merely because he had primary custody of Child. *See M.J.M.*, 63 A.3d at 339 (explaining that a court can consider a parent's status as primary caretaker as it considers the section 5328(a) factors). Additionally, while the record does indicate that Father has a demanding work schedule, it also reflects that he has reduced his hours to spend more time with his children. N.T., 7/31/2024, at 58. Even with his busy work schedule, Father testified that he got Child ready for school every day, and now that his workday ends at 2:30 p.m., he has been providing direct day-to-day care for Child from after school

- 15 -

until bedtime and is now more involved in her afterschool and weekend activities. *See id.* at 58, 87. Although the trial court conceded that Mother provided for most of Child's care prior to August 2022, she has not recently had the custody time necessary for a finding of factor (a)(3) in her favor.

Moreover, the trial court properly considered the primary caretaker doctrine in the context of all the section 5328(a) factors and determined that, while this factor did favor Father, the primary basis of its decision was factor (a)(2) and the safety of Child. *See* Trial Court Opinion, 8/28/2024, at 5; *see also* 23 Pa.C.S. § 5328(a) ("the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child"). Accordingly, we conclude that the trial court did not err in its analysis of factor (a)(3).

For her final three issues, Mother argues that the trial court erred in awarding Father primary custody physical custody of Child, asserting that its decision was against the weight of the evidence. Mother's Brief at 30, 35-36, 41-45. Specifically, Mother asserts that the trial court wrongly awarded Father primary custody after it determined that the custody factors of section 5328(a) largely favored her. *Id.* at 41-45.

The trial court concluded that the factors of section 5328(a)(1), (5), (6), (9), and (10) favored Mother, and that only the factors at section 5328(a)(2) and (3) favored Father. *See* Trial Court Opinion, 8/15/2024, at 2-7. The court found that the remaining factors of section 5328(a) were either neutral

or inapplicable. *See id.* Thus, Mother is correct that the trial court found that more factors of section 5328(a) weighed in her favor. As stated above, however, section 5328(a) expressly states that the court is to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a); *see also White v. Malecki*, 296 A.3d 1210, 1213 (Pa. Super. 2023) (same). This is precisely what occurred in this case—the trial court gave weighted consideration to factor (a)(2), even though more factors favored Mother. Trial Court Opinion, 8/28/2024, at 5. The custody factors are not akin to a scorecard, requiring custody to be given to the party who has more factors found in his or her favor; instead, it is within the purview of the trial court to determine which of the "factors to accord the most weight." *T.M. v. H.M.*, 210 A.3d 283, 290 (Pa. Super. 2019) (citation omitted).

In challenging the trial court's findings and conclusions, Mother seeks to have this Court re-find facts and re-weigh evidence. However, we cannot disturb the trial court's findings of fact and other determinations regarding the weight of the evidence so long as they are supported by competent evidence of record. *Taylor v. Smith*, 302 A.3d 203, 210 (Pa. Super. 2023). As we have already concluded that the court did not abuse its discretion in finding that factor (a)(2) favored Father, we cannot conclude that the trial court abused its discretion in awarding Father primary physical custody even though the court determined that more of the section 5328(a) factors favored Mother. As such, Mother's final three issues do not entitle her to relief.

Based on the foregoing, the trial court did not abuse its discretion in reaching its custody determination. We therefore affirm the order awarding Father primary physical custody of Child during the school year.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/4/2025